OLLENDORFF WATCH CO., INC., et al., Respondents, *v.* LOUIS H. PINK, as Superintendent of Insurance of the State of New York, Appellant.

Argued October 13, 1938; decided November 29, 1938.

*John J. Bennett, Jr.*, Attorney-General (*Leonard M. Gardner* and *Henry Epstein* of counsel), for appellant. The watch company receives a " premium " for each certificate issued to purchasers of its watches. (*Herbert v. Shanley Co.*, 242 U. S. 591; *Palmetto Fire Ins. Co. v. Conn*, 272 U. S. 295; *Barna v. Clifford Country ¹Estates, Inc.*, 143 Misc. Rep. 813; *Hunt v. Public Mut. Ben. Foundation*, 94 Fed. Rep. [2d] 749.) A promise by an indemnitor to pay money in the event of loss is not an essential of an insurance contract. (*People v. Roschli*, 275 N. Y. 26; *Barna v. Clifford Country Estates, Inc.*, 143 Misc. Rep. 813; *People v. Standard Plate Glass & Salvage Co.*, 174 App. Div. 501; *Attorney-General v. Osgood Co.*, ·249 Mass. 473; *Commonwealth v. Provident Bicycle Assn.*, 178 Penn. St. 636; *Commonwealth v. Fidelity Land Value Assur. Co.*, 312 Penn. St. 425; *Ruto v. Italian Burial Casket Co.*, 104 Pa. Sup. Ct. 288.) The certificates issued by the watch company are contracts of insurance in form and substance. (*People v. Roschli*, 275 N. Y. 26; *State of Ohio ex rel. Duffy v. Western Auto*

*Supply Co.*, 134 Ohio St. 163.) The watch company, by engaging in other activities in addition to the issuance of its watch insurance certificate, is not relieved of the necessity for complying with section 9 of the Insurance Law (Cons. Laws, ch. 28). (*People* v. *Roschli*, 275 N. Y. 26; *Attorney-General* v. *Osgood Co.*, 249 Mass. 473.)

*P. C. Dugan*, *Otto A. Samuels* and *William J. Moran* for respondents. The watch company is not transacting any business of insurance by the delivery of an agreement with the owners of its watches to replace a watch if stolen. (*Trustees of First Baptist Church* v. *Brooklyn Fire Ins. Co.*, 28 N. Y. 153; *Tyler* v. *New Amsterdam Fire Ins. Co.*, 4 Robt. 151; *Matter of O' Neill*, 143 Misc. Rep. 69; *Imperial Fire Ins. Co.* v. *Coos County*, 151 U. S. 452; *Commonwealth* v. *Provident Bicycle Assn.*, 178 Penn. St. 636; *Stern* v. *Rosenthal*, 71 Misc. Rep. 422; *People ex rel. Woodward* v. *Rosendale*, 142 N. Y. 126; *People ex rel. Daily Credit Service Corp.* v. *May*, 162 App. Div. 215; 212 N. Y. 561; *U. S. Fidelity & Guaranty Co.* v. *Highway Engineering Co.*, 51 Fed. Rep. [2d] 894; *Matter of Fire Certificate*, 39 Pa. County Ct. 163; *Cole Bros. & Hart* v. *Haven*, 7 N. W. Rep. 383; *Evans & Tate* v. *Premier Refining Co.*, 31 Ga. App. 303; *Colaizzi* v. *Pennsylvania R. R. Co.*, 208 N. Y. 275; *State* v. *Towle*, 80 Me. 287.) The question, "Does the delivery of said certificates and agreements by the Ollendorff Watch Co., Inc., to the owners of its watches violate section 9 of the Insurance Law of the State of New York," was properly answered in the negative and the judgment entered accordingly should be affirmed. (*Hewin* v. *City of Atlanta*, 121 Ga. 735; *People* v. *Gillson*, 109 N. Y. 389; *People ex rel. Madden* v. *Dycker*, 72 App. Div. 308; *People ex rel. Appel* v. *Zimmerman*, 102 App. Div. 103.) Nothing was regarded as premium by the parties to the agreement to replace a watch. The watch had a sales price and no charge

was added thereto for such agreement. (*Philpot* v. *Gruninger*, 81 U. S. 570; *Fire Ins. Assn.* v. *Wichham*, 141 U. S. 564; *McGovern* v. *City of New York*, 234 N. Y. 377; *Beck* v. *Sheldon*, 259 N. Y. 208.)

CRANE, Ch. J.   This case was presented to the Appellate Division upon an agreed statement of facts, seeking an answer to this question: " Does the delivery of said certificates and agreements by the plaintiff, the Ollendorff Watch Co., Inc., to the owners of its watches violate Section 9 of the Insurance Law [Cons. Laws, ch. 28] of the State of New York? "

Section 9, so far as applicable, provides that no corporation nor any individual shall transact the business of insurance within this State without the certificate of the Superintendent of Insurance certifying under his hand and seal that the corporation or individual has complied with all requirements of law authorizing it to transact insurance business.

The Ollendorff Watch Co., Inc., is a domestic corporation selling watches as well as other merchandise.   The agreed statement contains an extract from the certificate of incorporation.   Since October, 1930, the company has been delivering a certificate and agreement to the purchaser of a watch, in which the company agrees to replace such watch with a new watch of like quality and value, provided the first watch is lost within one year from the date of purchase in the United States or Canada through burglary or robbery.   The agreed statement in paragraph VI reads as follows:

" VI.  That the said plaintiff, Ollendorff Watch Co., Inc., adds no charge to the sales price of its watches for the aforesaid certificates and agreements.   The cost of the insurance policy numbered SPL-1889577 is borne by Ollendorff Watch Co., Inc., out of its corporate income from various sources including the sales of watches and is charged on its books as an item of expense incident to the business in which it is engaged."

The insurance policy referred to in this paragraph relates to the Travelers Indemnity Company, a Connecticut corporation which insures the Ollendorff Watch Co., Inc., against all losses sustained by reason of these replacement agreements with its customers. Does this constitute carrying on the insurance business by the Ollendorff Watch Co., Inc.? This goes further than a guaranty or warranty. For instance, a warranty would relate in some way to the nature or efficiency of the product sold — in this case, that the watch would work or was of a certain make and fineness. A warranty would not cover a hazard having nothing whatever to do with the make or quality of the watch. A guaranty is an undertaking that the amount contracted to be paid will be paid, or the services guaranteed will be performed. It relates directly to the substance and purpose of the transaction.

This contract goes much further. It has nothing whatever to do with the sale of the watch or the contract of sale. It is an extraneous inducement to procure sales. If the watch is stolen the seller will replace it. In other words, he takes a chance or a risk of theft from his customers; that is, he insures them for a year against such risk.

. As this transaction presents itself to the mind, it is not so apparent as it would be if the principle were applied to other things. In this day it is not an unusual thing for speculators to put up hundreds of model houses in a development. Could the builder, in selling the house, agree that if it burned down within a year he would rebuild it, repair it or give another house for it? The fire insurance feature is readily apparent. So with automobiles, is it insurance to contract with the purchaser that if the automobile be stolen or destroyed by fire the seller will replace it? Carrying this out to all classes of bargain and sale, we can see how far the insurance feature may go.

All insurance law makes one of the elements of insurance the payment of a premium — a consideration. It is said

that this is not insurance because the price is the same, whether the certificate be given or not; that the purchaser pays nothing for the insurance; that he pays only the price of the watch. Nevertheless, we have this in the case: The seller insures the risk and pays the Travelers Indemnity Company a premium; in other words, it reinsures at its own expense. This, however, is the payment for insurance by indirection instead of by direct act of the purchaser. The fact that the insurance comes out of the proceeds of all the income of the watch company cannot hide the reality of the transaction. The price which the purchaser of the watch pays is not only for the watch but for everything which the seller gives him. The seller would not give him the insurance if he did not buy the watch. The price he pays for the watch is the inducement for the insurance the same as the certificate of insurance is an inducement for the purchase. That consideration for a bargain may be of this nature, see *Herbert* v. *Shanley Co.* (242 U. S. 591); *Palmetto Fire Ins. Co.* v. *Conn* (272 U. S. 295); *Hunt* v. *Public Mut. Benefit Foundation* (94 Fed. Rep. [2d] 749). The payment of a sum of money is not necessary to constitute the consideration of an insurance contract. (*People* v. *Roschli*, 275 N. Y. 26.) While the statutes of New York do not define a contract of insurance, other States have sought to codify the common law. Massachusetts, in its General Laws, chapter 175, section 2, provides: " A contract of insurance is an agreement by which one party for a consideration promises to pay money or its equivalent, or to do an act valuable to the insured, upon the destruction, loss or injury of something in which the other party has an interest."

This is a statement of the common law as it exists in this State of New York, and the agreement here in question falls within it. Interpreting the Massachusetts law, the court said, in *Attorney-General* v. *Osgood Co.* (249 Mass. 473, 477): " Whether this clause in the contracts of the

defendant is ancillary to its chief business or is mainly for advertising ends is not relevant in view of the absolute prohibition in G. L., c. 175, § 3, against the making of contracts for insurance except by companies and in the manner authorized by law. This prohibition is sweeping. It is not subject to exceptions." (See, also, *Imperial Fire Ins. Co.* v. *Coos County*, 151 U. S. 452.) The cases cited (*Cole Bros. & Hart* v. *Haven*, 7 N. W. Rep. 383, and *Evans & Tate* v. *Premier Refining Co.*, 31 Ga. App. 303) are in the nature of warranties, and so distinguishable on the present appeal.

The judgment should be reversed and judgment granted in favor of defendant. By stipulation, no costs are to be awarded.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.