NORWEST CORPORATION, A DELAWARE CORPORATION, ET AL.,
APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF
INSURANCE,
APPELLEE, AND NEBRASKA LAND TITLE ASSOCIATION,
INTERVENOR-APPELLEE.

571 N.W. 2d 628

Filed December 19, 1997.   No. S-96-108.

Linda W. Rohman, of Erickson & Sederstrom, P.C., for appellants.

Don Stenberg, Attorney General, and Timothy J. Texel for appellee.

William M. Lamson, Jr., Michael J. Dugan, and Michael S. Degan, of Kennedy, Holland, DeLacy & Svoboda, for intervenor-appellee.

Robert J. Hallstrom, of Brandt, Horan, Hallstrom & Sedlacek, for amicus curiae Nebraska Bankers Association, Inc.

WHITE, C.J., CAPORALE, WRIGHT, GERRARD, STEPHAN, and McCORMACK, JJ., and FAHRNBRUCH, J., Retired.

McCORMACK, J.

This case involves a determination of whether certain contractual undertakings by Norwest Mortgage, Inc. (NMI); American Land Title Company, Inc., doing business as ATI Title Company (ATI); and Norwest Corporation (Norwest) (collectively referred to as "appellants") relating to the status of mortgages securing residential mortgage loans originated by NMI and sold to secondary market purchasers such as the Federal Home Loan Mortgage Corporation ("Freddie Mac") are insurance contracts and therefore subject to regulation under Nebraska law. The Nebraska Department of Insurance

(Department), upon a hearing, issued a cease and desist order, finding that appellants were engaged in the unauthorized business of insurance by marketing and selling a program called Title Option Plus (TOP) to mortgage loan applicants. The Nebraska Land Title Association entered this matter before the Department as intervenor. The district court for Lancaster County, Nebraska, concluded that TOP constitutes insurance as defined in Neb. Rev. Stat. § 44-102 (Reissue 1993) and title insurance as defined in Neb. Rev. Stat. § 44-201(15) (Reissue 1993) and that there was sufficient evidence in the record to support the Department's finding that TOP was designed to evade the insurance laws and was marketed in a misleading fashion. The district court ordered appellants to replace, at no cost to the borrowers, all title condition reports for properties located in Nebraska issued subsequent to June 1, 1995, with lender's title policies, each policy to be effective the date of the title condition report it replaces. Appellants timely appealed. We granted the Department's and the Nebraska Land Title Association's petitions to bypass and transferred the case to our docket. We now affirm.

## BACKGROUND

Appellants are three corporate entities. Norwest, a Delaware corporation, is a bank holding company with its principal place of business in Minneapolis, Minnesota. NMI is a wholly owned subsidiary of Norwest engaged in banking activities and is a California corporation with its principal place of business in Des Moines, Iowa. ATI is a wholly owned subsidiary of NMI engaged in the business of performing title searches on real property and is a Nebraska corporation with its principal place of business in Omaha, Nebraska. This dispute arises primarily from the sale of TOP by NMI to Nebraska mortgage borrowers.

The TOP program is embodied in three interrelated contractual agreements as described by the order of the Lancaster County District Court dated January 4, 1996:

The first contract, the Master Agreement, is a "warranty" by NMI to Freddie Mac that those mortgages NMI sells to Freddie Mac are secured by a first lien. NMI's contractual undertakings under the Master Agreement protect Freddie

Mac against any title claims or problems, including non-record risks, that may affect Freddie Mac's interest in the loans it has purchased. If a defect appears and cannot be cured, NMI agrees to repurchase the loan, if the claim cannot be otherwise resolved. (It is noted that NMI only warrants the title and priority of a lien, when the title search and title report is performed by ATI.[)]

The second contract is a title condition report prepared by ATI and furnished to NMI to verify that, as a matter of public record, NMI's mortgage is secured by a first lien. ATI remains liable to NMI for any on-record defects that are missed in the title search, while NMI assumes the risk of off-record defects.

The third contractual arrangement is the Guarantee Agreement from Norwest to Freddie Mac under which Norwest guarantees NMI's title-related obligations to Freddie Mac. Freddie Mac normally requires that the seller's warranty (in this case, NMI's) of the first-lien status be backed up by a third-party title insurance policy. Under the Guarantee Agreement between Norwest and Freddie Mac, however, Norwest takes the place of a third-party title insurance company and backs up the warranty agreement between NMI and Freddie Mac. NMI's warranty standing alone was not sufficient to relieve NMI of Freddie Mac's traditional requirement that the seller of the mortgage obtain a lender's title insurance. Thus, absent the guarantee from Norwest, NMI's warranty in regard to TOP would not satisfy Freddie Mac's requirement of a third-party title insurance policy.

Appellants did not attempt to obtain the approval of the Department for marketing TOP. One of appellants' goals was to implement TOP so that it would be "grandfathered" if in fact there was future adverse legislation.

In 1994, NMI began soliciting TOP as an alternative to title insurance. TOP was sold to borrowers by and through NMI loan officers. The TOP program works essentially as follows: When a prospective borrower comes to an NMI branch office to obtain a mortgage loan, the borrower is given the option of purchasing TOP to satisfy a lender's title insurance requirement, rather than

purchasing the lender's title insurance policy. NMI sets aside a reserve for losses of 2 percent of the amount expected under the TOP program based on data compiled by title insurance companies. NMI pays ATI the entire fee paid by the borrower, and no part of the fee is applied to the reserve fund. NMI and ATI, however, held a contest among NMI loan officers to sell TOP, which awarded the winner of the contest a trip from a selection of various places. After the borrower pays the TOP premium, ATI completes a title search on the property for which the borrower is obtaining a mortgage and issues a preliminary title report indicating the search results. ATI then issues a final title condition certificate at closing reflecting that NMI has first-lien status. Norwest, through its subsidiary NMI, then packages and sells these mortgages with TOP protection to Freddie Mac.

Before it will purchase any mortgages from lenders, Freddie Mac requires either (1) a fully paid mortgage title insurance policy or (2) an attorney's title opinion or certificate. In February 1994, however, NMI reached an agreement with Freddie Mac (the master agreement) that Freddie Mac would purchase mortgages with TOP protection instead of the traditionally required lender's title insurance policy or attorney's title opinion. Pursuant to the terms of the master agreement, NMI agrees to defend any and all claims against a title securing a TOP-backed mortgage sold to Freddie Mac and further agrees to take all necessary steps to secure title. If the claim or defect cannot be remedied, NMI agrees to repurchase the loan. The master agreement between NMI and Freddie Mac requires NMI to hold Freddie Mac harmless from any and all claims against the title to underlying property. Under the guarantee agreement between Norwest and Freddie Mac, Norwest takes the place of a third-party title insurance company and backs the warranty agreement between NMI and Freddie Mac. Absent the guarantee from Norwest, NMI's warranty regarding TOP would not satisfy Freddie Mac's third-party title insurance requirement.

On August 26, 1994, the Department issued to appellants an order to cease and desist, along with an order to show cause and notice of hearing. The order was entered because of information the Department received indicating that appellants were engaged in the unauthorized business of insurance and in an

unfair insurance trade practice regarding the solicitation of TOP. The Department concluded that TOP constituted the "substantive equivalent" of title insurance within the meaning of Neb. Rev. Stat. § 44-1942 (Reissue 1993). The Department also found that TOP was created to evade Nebraska insurance laws.

Appellants filed an application for stay with the Department pending judicial review. The Department denied this motion. Appellants then filed a petition for review in the district court for Lancaster County, alleging that TOP is not insurance and was not created to evade Nebraska insurance laws. Appellants also filed a motion for stay in district court. The district court granted the motion on the condition that a bond be filed by the presidents of Norwest, NMI, and ATI.

The district court concluded that TOP constitutes an attempt by appellants to evade Nebraska insurance laws. The district court concluded, based upon the record created before the Department, that TOP constitutes insurance within the meaning of § 44-102, that appellants are not licensed to transact the business of insurance, and that appellants are therefore engaged in the unauthorized business of insurance. The district court also found that the manner in which TOP was marketed and sold to consumers was misleading. From the decision of the district court, appellants timely appeal.

## ASSIGNMENTS OF ERROR

Summarized and restated, appellants assign as error the district court's determination that (1) the opinion rendered by the Department should be given deference and a presumption of validity, (2) TOP was insurance as defined in Nebraska statutes, (3) TOP was designed to evade insurance laws and was marketed in a misleading fashion, (4) the district court had jurisdiction to regulate these activities, (5) the warranty given to Freddie Mac by NMI was insurance rather than a sales warranty, (6) TOP involves a transfer of risk, (7) the fee paid to ATI for title condition reports was an insurance premium, and (8) the three contractual undertakings constituted one, not three, agreements.

## STANDARD OF REVIEW

A final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed,

vacated, or modified by an appellate court for errors appearing on the record. *McGuire v. Department of Motor Vehicles, ante* p. 92, 568 N.W.2d 471 (1997); *Piska v. Nebraska Dept. of Soc. Servs.*, 252 Neb. 589, 567 N.W.2d 544 (1997); *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*, 252 Neb. 387, 562 N.W.2d 551 (1997); *Kolesnick v. Omaha Pub. Sch. Dist.*, 251 Neb. 575, 558 N.W.2d 807 (1997); *Val-Pak Of Omaha v. Department of Revenue*, 249 Neb. 776, 545 N.W.2d 447 (1996).

On an appeal under the Administrative Procedure Act, an appellate court reviews the judgment of the district court for errors appearing on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997); *IBP, inc. v. Sands*, 252 Neb. 573, 563 N.W.2d 353 (1997); *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997); *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997).

## ANALYSIS

The issue in this case is whether any of the three contractual undertakings involved in TOP constitutes a contract of insurance pursuant to § 44-102.

### JURISDICTION

The threshold inquiry is whether the Department had jurisdiction to regulate the activities involved in the instant case. Appellants argue that the Department lacked jurisdiction because neither the master agreement nor the guarantee agreement was executed in Nebraska. The appellants claim that only those acts defined in Neb. Rev. Stat. § 44-2002(2) (Reissue 1993) performed in the State of Nebraska via mail and taking effect in Nebraska are deemed to constitute the transaction of insurance business in Nebraska. Appellants further argue that Nebraska's only connection with the TOP program is the records search performed by ATI in preparation of title reports for NMI. Therefore, appellants claim, because the contract between NMI and Freddie Mac does not concern Nebraska, such activity is beyond the regulation and control of the Department. We disagree.

Neb. Rev. Stat. § 44-101.01 (Reissue 1993) provides: "The Department of Insurance shall have general supervision, control, and regulation of insurance companies, associations, and societies and the business of insurance in Nebraska . . . ." Section 44-102 defines insurance as

a contract whereby one party, called the insurer, for a consideration, undertakes to pay money or its equivalent or to do an act valuable to another party, called the insured, or to his or her beneficiary, upon the happening of the hazard or peril insured against whereby the party insured or his or her beneficiary suffers loss or injury.

In addition, Neb. Rev. Stat. § 44-2004 (Reissue 1993) specifies when personal jurisdiction attaches to any insurer:

Any act of transacting an insurance business as set forth in section 44-2002 by any unauthorized insurer shall constitute sufficient contact with this state for the exercise of personal jurisdiction over such insurer in any action, suit, or proceeding in any court by the Director of Insurance or by the state or in any proceeding before the director and which arises out of transacting an insurance business in this state by such insurer.

Section 44-2002(2) provides:

Any of the following acts in this state effected by mail or otherwise by or on behalf of an unauthorized insurer shall constitute the transaction of an insurance business in this state. The venue of an act committed by mail shall be at the point where the matter transmitted by mail is delivered and takes effect. For purposes of this section, unless the context otherwise requires, insurer shall include all corporations, associations, partnerships, and individuals engaged as principals in the business of insurance and shall also include interinsurance exchanges and mutual benefit societies:

(a) The making of or proposing to make, as an insurer, an insurance contract;

(b) The making of or proposing to make, as guarantor or surety, any contract of guaranty or suretyship as a vocation and not merely incidental to any other legitimate business or activity of the guarantor or surety;

(c) The taking or receiving of any application for insurance;

(d) The receiving or collection of any premium, commission, membership fees, assessments, dues, or other consideration for any insurance or any part thereof;

(e) The issuance or delivery of contracts of insurance to residents of this state or to persons authorized to do business in this state;

(f) Directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another any person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or investigation or adjustment of claims or losses or in the transaction of matters subsequent to effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located, or to be performed in this state. This subsection shall not operate to prohibit full-time salaried employees of a corporate insured from acting in the capacity of an insurance manager or buyer in placing insurance in behalf of such employer;

(g) The transaction of any kind of insurance business specifically recognized as transacting an insurance business within the meaning of the statutes relating to insurance; or

(h) The transacting or proposing to transact any insurance business in substance equivalent to any of the provisions of subdivisions (a) through (g) of this subsection in a manner designed to evade the provisions of the statutes.

An administrative agency has the power specifically conferred by statute to enforce laws, *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994); therefore, subject matter jurisdiction can properly be asserted when the action of a defendant in a forum state is specifically regulated by statute. For reasons more fully set out below, we determine that TOP is regulated by

statute as insurance or in substance equivalent to insurance. Therefore, appellants have engaged in activities which create jurisdiction over them in Nebraska, and the Department properly asserted jurisdiction in the instant case.

## PRESUMPTION OF VALIDITY OF DEPARTMENT OPINION

Appellants next assert that the district court erred in giving the Department's opinion a presumption of validity and therefore failed to apply the appropriate standard of review. This argument is without merit. Pursuant to Neb. Rev. Stat. § 84-917(5) (Reissue 1994), the district court's review of the decision of the Department is de novo on the record. Appellants cite *Slack Nsg. Home v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995), for the proposition that an administrative determination of a question of law is not entitled to a presumption of correctness or validity. In *Dillard Dept. Stores v. Polinsky*, 247 Neb. 821, 530 N.W.2d 637 (1995), however, we recognized that the de novo standard of review which must be applied by the district court when reviewing administrative agency decisions is not inconsistent with the proposition that a rebuttable presumption of validity attaches to the actions of administrative agencies. Therefore, the district court did not err in according a presumption of validity to the Department's determination.

## INSURANCE

We now turn to the pivotal issue in the present case: whether TOP constitutes insurance or the substantive equivalent of insurance. Under § 44-102, the definition of insurance contains the following elements: (1) the existence of a contract whereby, (2) for a consideration, (3) one party (the insurer) promises to pay money or perform a valuable act for the benefit of the other party (the insured), (4) upon the happening of a stated hazard or peril that results in a loss to the insured. See *Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. 21, 317 N.W.2d 745 (1982). Appellants contend that TOP is not insurance or its substantive equivalent because it is a sales warranty, no transfer of risk is involved, no premium is paid, and it consists of three separate and distinct contractual undertakings. We disagree.

To make a determination on this issue, we must first look to appellants' contention that TOP constitutes three separate and distinct agreements, not one contractual agreement. This contention is without merit. Appellants concede that the three contractual undertakings at issue "are collectively called the Title Option Plus ('TOP') program," brief for appellants at 2, but argue that none of these agreements individually satisfies the statutory definition of insurance when viewed alone. This court has held that instruments made in reference to and as part of the same transaction are to be considered and construed together, and the fact that the instruments were made or dated at different times is not significant if they are related to and were part of the transaction. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996); *Lee Sapp Leasing v. Catholic Archbishop of Omaha*, 248 Neb. 829, 540 N.W.2d 101 (1995); *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). In the instant case, each of the contracts for TOP contemplates the others. The district court stated:

> TOP is an integrated concept comprised of several individual transactions. TOP is effectuated when a borrower, applying for a property loan, elects TOP rather than traditional title insurance policies. When the borrower elects TOP, ATI conducts the title search and NMI provides a warranty to Freddie Mac. NMI's warranty to Freddie Mac is contingent on ATI performing the title search. Additionally, Freddie Mac requires that the warranty be backed up by a guarantee from Norwest; however, Norwest's guarantee is given only when the borrower elects TOP. As such, the entire TOP concept is comprised of the three transactions. If one of the transactions was omitted, the TOP concept would virtually be nonexistent.

Therefore, each of the three agreements is part of the same transaction, and they must be construed together as one contractual undertaking. Thus, TOP meets the first requirement of § 44-102 requiring the existence of a contract.

The next element required for a determination as to whether TOP is insurance is consideration. Appellants contend that the fee paid to ATI for title condition reports does not constitute an insurance premium. We disagree. When a mortgage borrower

elects to purchase TOP to satisfy the lender's title insurance requirement, the borrower pays the TOP fee. TOP is a for-profit concern. An interoffice memorandum from NMI's executive vice president in charge of TOP to all branch managers indicates the profitability of TOP: "[NMI branches] will also increase revenue by the soft dollars that you receive by selling TOP!" While appellants state that NMI and Norwest receive no part of the consideration paid to ATI, we note that NMI and ATI are both wholly owned subsidiaries of Norwest. Therefore, funds may flow between all three entities. Further, unlike the fee for an attorney's title opinion, the TOP fee is not a flat rate, but, rather, varies with the amount of the loan. The charge made for the product produced by ATI, therefore, is much more akin to the charge for title insurance, which is based on the value of the property being insured, than to the charge for a simple title or lien search, which is a flat fee. Based on the foregoing, we conclude that the district court's determination that the TOP fee constituted an insurance premium was supported by competent evidence.

The third element required for a finding of insurance is a promise by one party to perform a valuable act for the benefit of the other party. This requirement is met when NMI, in the master agreement, promises to protect Freddie Mac against title claims or problems that may affect Freddie Mac's interest in the loans it has purchased. This requirement is also met when Norwest guarantees NMI's obligations to Freddie Mac.

The final element required for a determination of whether TOP is insurance is the requirement that the above promise by one party to another occurs upon the happening of a stated hazard or peril which results in a loss to the insured. This requirement has also been met. Here, both NMI's and Norwest's promises occur in the event that it is discovered that the loans sold by NMI to Freddie Mac do not have first-lien status or are subject to a third-party claim. This discovery could result in a loss to Freddie Mac when it tries to collect on the obligation. By promising to protect Freddie Mac from such an event, Norwest and NMI act as insurers against Freddie Mac's loss if a loan does not have first-lien status. The district court stated:

> TOP operates in the same fashion as title insurance in that it provides protection for all risks, including off-

record risks. As the TOP literature makes clear, TOP was designed to provide the same level of protection as loan title insurance. It is helpful to note that under a traditional lender's title insurance policy, an assignment of the policy to a secondary mortgage market is anticipated as part of the original mortgage transaction; thus, the assignee (in this case, Freddie Mac) would be described from the outset of the transaction so that the policy would remain effective to the benefit of the assignee. BAXTER DUNAWAY, THE LAW OF DISTRESSED REAL ESTATE § 27B.02 (1992). In TOP, the risks and perils insured against for the benefit of Freddie Mac are the same as those insured against if Freddie Mac was the assignee in a traditional lender's title insurance policy. As such, the function of TOP and a lender's title insurance policy is to provide title protection to secondary market purchasers.

We now turn to appellants' contention that TOP does not constitute insurance because there is no transfer of risk. This contention is without merit. We first note that Nebraska law does not define insurance in terms of transfer of risk. In the area of risk, however, businesses can self-insure themselves against certain risks they would have otherwise insured against with a third-party insurer. In *United States v. Newton Livestock Auction Market, Inc.*, 336 F.2d 673, 676 (10th Cir. 1964), the Tenth Circuit stated that self-insurance is defined as "the assumption of risk of his own loss by one having an insurable interest." The present case does not involve self-insurance. The district court found that when NMI owns the mortgage, it bears the risk. When NMI sells the mortgage to Freddie Mac, however, it no longer owns the mortgage and does not have an insurable interest. Therefore, Freddie Mac, the owner of the mortgage, bears the risk. We find this reasoning to be persuasive. For appellants' actions to be considered self-insurance, NMI would have to retain an insurable interest in the mortgages sold to Freddie Mac. Instead, Freddie Mac assumes the risk once it purchases the mortgages and looks to NMI and Norwest only to indemnify it from such a risk. Further, the primary obligation in the present case is the promissory note for the mortgage given by the borrower to NMI. The borrower is thus the

primary obligor. When NMI sells the loan with TOP protection to Freddie Mac, however, NMI now assumes the risk of loss. In deposition testimony, NMI stated that it was Norwest's "policy" not to go against the borrower in the event of a problem with a lien. The problem with this "policy" of Norwest's is that the borrower who paid the premium or charge is not contractually protected. Norwest's "policy" could change, and the borrower would have no recourse or protection against the change in "policy."

Next we turn to appellants' contention that TOP is not insurance but merely a warranty given to Freddie Mac. We do not agree. In *Ollendorf Watch Co. v. Pink*, 279 N.Y. 32, 17 N.E.2d 676 (1938), the court illustrated the distinction between a warranty and insurance. In that case, the court found that a certificate issued by a watch manufacturer which agreed to replace a watch if lost or stolen within 1 year from the date of insurance constituted insurance, even though no consideration in addition to the purchase price was paid. The court stated that this certificate went beyond mere warranty because it protected against hazards which had nothing to do with the make or quality of the watch.

The distinction between a warranty and an insurance policy was also discussed in *Rayos v. Chrysler Credit Corp.*, 683 S.W.2d 546 (Tex. App. 1985). In that case, the court held that "a warranty is issued to provide protection against defects and failures in a product, whereas an insurance policy is issued to provide reimbursement or indemnity based on an accident or occurrence unrelated to any defect or failure in the product." *Id.* at 548. In the present case, however, appellants provide no authority that a lien constitutes a product. The case law, to the contrary, indicates that a mortgage given on land to secure the payment of a debt is held to be a lien and nothing more. See *R. L. Sweet Lumber Company v. E. L. Lane, Inc.*, 513 S.W.2d 365 (Mo. 1974). Even assuming that a mortgage is a product, the product in the instant case is a first-lien mortgage of record. Under the *Rayos* and *Ollendorf Watch Co.* holdings, NMI can warrant the first-lien mortgage only to the extent of an adverse claim because of a negligently prepared title search. In indem-

nifying Freddie Mac from unrecorded risks, NMI goes beyond a simple warranty on the product and in fact provides insurance.

Further support for the proposition that TOP is insurance is found in *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997), wherein this court defined title insurance. In *Tess*, we stated that "title insurance is a contract for indemnity under which the insurer is obligated to indemnify the insured against losses sustained in the event that a specific contingency, e.g., the discovery of a lien or encumbrance affecting title, occurs." *Id.* at 511, 557 N.W.2d at 703. In the present case, before NMI sells mortgages to Freddie Mac, a title search is conducted by ATI. When a TOP mortgage is sold to Freddie Mac, the record prepared by ATI indicates that Freddie Mac has first-lien position. If it is determined at a later date that there was an unrecorded title problem unable to be uncovered by the title search, appellants agree to defend Freddie Mac's title or buy the mortgage back. Because appellants are obligated to indemnify the insured against losses sustained in the event that a specific contingency occurs (an off-record claim), this agreement clearly constitutes indemnification of Freddie Mac. Appellants argue that the scope of the title search performed by ATI has nothing to do with the nature of the title sold by NMI. Under this analysis, however, Freddie Mac would not have required that the mortgages have first-lien position and would not have required Norwest to guarantee NMI's performance.

Finally, appellants urge us to follow the ruling by the Virginia State Corporation Commission and its bureau of insurance in Commonwealth of Virginia ex rel. State Corporation Commission v. *Norwest Corporation, Norwest Mortgage, Inc. and American Land Title Company, Inc.*, case No. INS950079 (Oct. 28, 1996). We do not find this ruling persuasive. In that case, the commission found that TOP is not insurance. The commission, however, noted that there is no definition of insurance in Virginia. In Nebraska, there is a definition of insurance in § 44-102, which is set out in the "Jurisdiction" subsection above. The commission itself noted that Nebraska statutes define insurance to include the "equivalent" of specified activities that could cause TOP to be considered insurance and stated that Virginia has no comparable statutes. Because § 44-2002(2)

does provide for the transacting of the substantive equivalent of insurance, we conclude that because TOP looks like insurance and is sold like insurance, it is insurance.

This court is aware of the recent decision of the Virginia Supreme Court in the case *Lawyers Title Insurance Corporation v. Norwest Corporation, et al.*, No. 970385, 1997 WL 688667 (Va. Oct. 31, 1997). In this case, the Virginia Supreme Court affirmed the 1996 final order and opinion of the state corporation commission and its bureau of insurance which, in turn, reversed the findings of the hearing examiner, ·who found that the sale of TOP was transacting the business of title insurance in the commonwealth without first obtaining a license from the commission. The Virginia decision is distinguishable, however, from the decision we announce today in several respects.

First, the Virginia Supreme Court decision was not based on a de novo review, as was our decision. The standard of review in the Virginia case was that the commission's final order and opinion were presumed to be just, reasonable, and correct.

Second, the Virginia Supreme Court reached a 4-3 decision, focusing on the time when the TOP transaction occurs between the borrower (NMI customer) and the lender (NMI) and not on the time when the lender sells the loan to the secondary market such as Freddie Mac. The majority of the court reasoned that when NMI lends its money it assumes the risk that its lien is not first in priority and retains the risk, as opposed to transferring the risk to a title company. The three-judge dissent, however, said that the majority looks merely at the facade of Norwest's TOP program without considering its substance. The dissent asked the question, If there is no transfer of risk, what is the borrower getting for his premium? The dissent further states that the oral representations made by NMI employees to induce buyers to purchase TOP are sufficient to provide the terms of an oral contract, that these oral contracts were sufficient to indicate NMI had orally agreed to the shifting of some of the risk assumed by the borrower in the execution of the deed of trust, and that the oral contracts were contracts of insurance.

However, we do not find this shifting of risk analysis persuasive for two reasons: (1) Nebraska law does not define insurance in terms of transfer of risk and (2) as set out above, we find

that at the time NMI sells a mortgage to Freddie Mac, NMI no longer has an insurable interest after the sale, and that the owner of the mortgage, Freddie Mac, bears the risk. The three dissenting judges in the Virginia case stated that although the ultimate risk of a title defect remains with the borrower under the deed of trust, considering the substance of NMI's undertaking, its obligation to defend the title claim shifts a part of a TOP borrower's risk to NMI in return for the borrower's payment of the TOP fee.

Third, the Virginia Supreme Court majority found that TOP is a warranty, citing *Ollendorff Watch Co. v. Pink*, 279 N.Y. 32, 17 N.E.2d 676 (1938), because the representation by NMI that its loan is secured by a first mortgage represents the character and quality of the loan (product), and it is the status that is being warranted. We disagree and, in our opinion, find that in indemnifying Freddie Mac from unrecorded risk, NMI goes beyond a simple warranty on the product and in fact provides insurance. As pointed out in the three-judge dissent in the Virginia case, the warranty runs from NMI to the secondary market purchasers such as Freddie Mac and does not relate to the borrower, whose rights against NMI are created in the TOP agreement.

Finally, while *Lawyers Title Insurance Corporation, supra*, does not address the issue, we noted that in Commonwealth of Virginia ex rel. State Corporation Commission v. Norwest Corporation, Norwest Mortgage, Inc. and American Land Title Company, Inc., case No. INS950079 (Oct. 28, 1996), there is no statutory definition of insurance in Virginia. Nebraska's statutory definition of insurance, § 44-102, does not define insurance in terms of transfer of risk, which is the linchpin of the majority opinion of the Virginia Supreme Court.

## CONCLUSION

Having found that TOP is insurance or the substantive equivalent thereof, we find that the district court's ruling that TOP was marketed in a misleading manner to evade Nebraska insurance laws is supported by competent evidence. The judgment of the district court is therefore affirmed.

AFFIRMED.

CONNOLLY, J., not participating.