THOMAS E. MILLER, D.D.S., APPELLEE, V. MARK B. HORTON,
M.D., M.S.P.H., DIRECTOR OF HEALTH, ET AL., APPELLANTS.

574 N.W. 2d 112

Filed February 13, 1998.   No. S-96-534.

Don Stenberg, Attorney General, and Melanie J. Whittamore-Mantzios for appellants.

Fredric H. Kauffman and Susan Kubert Sapp, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

CAPORALE, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ., and CHEUVRONT, D.J.

McCormack, J.

This case is an appeal by Mark B. Horton, Director of Health; the Nebraska Department of Health; and the State of Nebraska ex rel. Don Stenberg, Attorney General (all hereinafter State), from a decision of the district court for Lancaster County, Nebraska. The action was begun by the then Department of Health as a disciplinary action under the Administrative Procedure Act (Act), Neb. Rev. Stat. § 84-901 et seq. (Reissue 1987 & Cum. Supp. 1992), against Thomas E. Miller, D.D.S. The district court reversed the decision of the Department of Health which had suspended Miller's license to practice dentistry for 30 days. We took this case upon our own motion under our power to regulate the caseloads of this court and the Nebraska Court of Appeals. We affirm.

## BACKGROUND

Miller has been licensed to practice dentistry in the State of Nebraska since July 1962, but is not licensed to practice either medicine or surgery. The Attorney General filed an action before the Department of Health against Miller in 1992, alleging that Miller had exceeded the scope of the practice of dentistry as delineated by Neb. Rev. Stat. § 71-183 (Reissue 1996) and that he had invaded the practice of medicine and surgery. The evidence adduced at the hearing showed that Miller had treated patients C.S., L.W., E.H., and Ardys Stadler during 1988 and 1989. The evidence further shows that an employee of Miller's, at Miller's request, had performed both blood and urine analyses of these patients during those time periods. Miller would then prescribe enzymes, based upon analysis and suggestions by the Nutritional Enzyme Support System (NESS) Corporation, to treat dietary deficiencies in these patients which could lead to more serious health problems such as bursitis, circulation problems, and other blood conditions, in addition to oral problems. Miller alleges that diet and nutrition are important in the practice of dentistry because diet can affect the deterioration of the teeth, jaws, and gums.

The State relied on the expert testimony of Dr. Richard Tempero for his opinions that relying on unscientific analysis to diagnose and prescribe enzyme treatments was outside the prac-

tice of dentistry and that no dental school taught such methods. Tempero testified that because the tests were not scientifically repeatable, they were unreliable as a method of diagnosing nutritional deficiencies that lead to dental problems. In its order entitled "Findings of Fact, Conclusions of Law and Order," dated November 30, 1994, the Department of Health found that Miller had practiced outside the scope of dentistry. The Department of Health, however, did not impose sanctions against Miller. Instead, the hearing officer scheduled a "dispositional hearing," at which time he would take new testimony and hear argument as to an appropriate disposition or sanction.

Miller appealed to the district court this decision finding he had practiced outside the scope of dentistry. The State demurred on the grounds that the Department of Health was waiting to hold a "dispositional hearing," and thus no disposition had been ordered in the administrative hearing. As such, the State argued that the matter was not yet ripe for judicial review by the district court. The district court overruled the demurrer, finding that there was no statutory authority for the Department of Health to hold a "dispositional hearing," but found that the Department of Health had authority to enter a disposition order in the case.

The Department of Health thereafter ordered that Miller's license to practice dentistry be suspended for 30 days. In May 1995, Miller filed a second petition, appealing both the Department of Health's original order finding that he had practiced outside the scope of dentistry and the suspension order. Miller later amended this petition. The State demurred on the grounds that the same cause of action was already pending between the two parties and that the district court had no jurisdiction over the original order because it had already decided the issue with its previous ruling. Miller then filed a motion to consolidate the two actions, which the district court granted at the same time that it overruled the State's demurrer. The district court then found that the State had failed to prove by clear and convincing evidence that Miller had practiced outside the scope of dentistry, and it reversed the orders and dismissed the proceedings against Miller by the Department of Health.

## ASSIGNMENTS OF ERROR

The State assigns that the district court erred (1) in finding that the November 30, 1994, findings of fact, conclusions of law, and order issued by the Department of Health was a final, appealable decision; (2) in overruling the State's motion to dismiss Miller's first petition for failing "to name the State of Nebraska ex rel. Attorney General Don Stenberg as a party"; (3) in overruling the State's demurrer to Miller's second petition on the basis that the district court did not have jurisdiction over the November 30 order; (4) in granting Miller's motion to consolidate the two petitions rather than dismissing one of the petitions; (5) in applying a pure de novo standard of review to the Department of Health's findings of fact and conclusions of law; (6) in interpreting what the scope of the practice of dentistry involved as set forth in § 71-183; and (7) in finding that Miller had practiced within the authorized scope of dentistry in testing his patients' urine and blood for nutritional deficiencies and prescribing enzymes as treatment.

## STANDARD OF REVIEW

A final order rendered by a district court in a judicial review pursuant to the Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Norwest Corp. v. State, ante* p. 574, 571 N.W.2d 628 (1997); *Wolgamott v. Abramson, ante* p. 350, 570 N.W.2d 818 (1997); *McGuire v. Department of Motor Vehicles, ante* p. 92, 568 N.W.2d 471 (1997). On an appeal under the Act, an appellate court reviews the judgment of the district court for errors appearing on the record and will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Norwest Corp. v. State, supra; Vinci v. Nebraska Dept. of Corr. Servs., ante* p. 423, 571 N.W.2d 53 (1997); *Spencer v. Omaha Pub. Sch. Dist.,* 252 Neb. 750, 566 N.W.2d 757 (1997).

Under § 84-917(5)(a), when a petition instituting proceedings for review under the Act is filed in the district court on or after July 1, 1989, the review shall be conducted by the court without a jury de novo on the record of the agency. *Rainbolt v. State,* 250 Neb. 567, 550 N.W.2d 341 (1996); *Metro Renovation v. State,* 249 Neb. 337, 543 N.W.2d 715 (1996); *McKibbin v.*

*State,* 5 Neb. App. 570, 560 N.W.2d 507 (1997). When reviewing an order of a district court under the Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Norwest Corp. v. State, supra*; *Wolgamott v. Abramson, supra*; *McGuire v. Department of Motor Vehicles, supra.*

## ANALYSIS

We note at the outset that the State abandoned its second assigned error that the trial court overruled the State's motion to dismiss based on the failure "to name the State of Nebraska ex rel. Attorney General" as a party at argument, and we will not discuss the matter herein.

The State's fifth assigned error, that the standard of review applied by the district court was unconstitutional, was not argued at the district court level. Where a cause has been appealed to a higher appellate court from a district court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal to the higher court. *Wolgamott v. Abramson, supra.* As such, the State's fifth assigned error will not be addressed.

For purposes of discussion, we consolidate the State's first, third, and fourth assigned errors to discuss the issues of whether the district court had jurisdiction over the first petition and whether the consolidation of the two petitions was proper. We will further combine the State's sixth and seventh assigned errors to assess whether the district court erred in reversing the findings of the Department of Health and in finding that Miller had practiced within the scope of dentistry.

### DISTRICT COURT JURISDICTION

It is the State's position that the district court did not have jurisdiction to hear Miller's appeal from the November 30, 1994, order, because the Department of Health had only made its findings of fact and conclusions of law but had not issued a disposition of the case.

In spite of the alleged infirmities in the first petition, however, the district court properly had jurisdiction over the second petition which followed the Department of Health's disposition

of the action. At that point, any jurisdictional infirmities were corrected, and the district court properly heard the matter under the provisions for judicial review outlined in the Act.

## ISSUANCE OF STAY

Miller, in his petition for review of the November 30, 1994, order, requested that the court stay the State from taking any action to affect the license holder as a result of the order, including the holding of a dispositional hearing. The court, by its order of February 10, 1995, granted this stay, finding that the Department of Health had no statutory authority to require a second dispositional hearing and that the record on this matter had been closed. Even if the district court had jurisdiction under the first petition, § 84-917(3) provides that upon the filing of a petition for review, the agency may order a stay or the court may order a stay. The stay can only be granted, however, when the court finds:

> (a) The applicant is likely to prevail when the court finally disposes of the matter, (b) without relief, the applicant will suffer irreparable injuries, (c) the grant of relief to the applicant will not substantially harm other parties to the proceedings, and (d) the threat to public health, safety, or welfare relied upon by the agency is not sufficiently serious to justify the agency's action in the circumstances.

§ 84-917(3). No such findings were made by the court in compliance with this section, and therefore the stay was improvidently granted.

## SCOPE OF PRACTICE OF DENTISTRY

The State's sixth and seventh assigned errors revolve around the district court's finding that Miller had not exceeded the scope of the practice of dentistry in using nutrition analysis to treat the patients in question. We review the judgment of the district court for errors appearing on the record and will not substitute our factual findings for those of the district court where competent evidence supports those findings. *Norwest Corp. v. State, ante* p. 574, 571 N.W.2d 628 (1997); *Vinci v. Nebraska Dept. of Corr. Serv., ante* p. 423, 571 N.W.2d 53 (1997); *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997). The question, therefore, is whether the

decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

The Department of Health must prove by clear and convincing evidence its allegations that Miller *both* practiced outside the scope of dentistry *and* that he had invaded the practice of medicine. Section 71-183 provides the definition for the practice of dentistry. Specifically, § 71-183 provides that one is practicing dentistry if he or she:

> (1) Performs, or attempts or professes to perform, any dental operation or oral surgery or dental service of any kind [or]
>
> . . . .
>
> (6) [d]iagnoses, or professes to diagnose, prescribe for, or professes to prescribe for, treats, or professes to treat disease, pain, deformity, deficiency, injury, or physical condition of the human teeth or jaws, or adjacent structure.

Based upon this definition, in its order filed April 5, 1996, the district court found:

> The evidence in the record (Plaintiff's dental records and testimony) demonstrates that Plaintiff customarily utilized blood and urine analysis in the diagnosis and treatment of specific dental problems related to the teeth, jaws or adjacent structures. It is abundantly clear that the Plaintiff's concern with nutritional deficiencies pertain and relate solely to the oral problems of his patients.

The evidence in the record indicates that Miller's treatment of his patients was within the statutory definition of dentistry when that statute is read as a whole. Miller testified that the purposes of the blood and urine analyses in the four patients was to assist in prescribing an enzyme which, in turn, would aid digestion to alleviate problems that had manifested themselves in the oral cavity. Miller had never prescribed enzyme pills for non-oral conditions.

The State urges that to read § 71-183 to allow for nutritional treatment of oral problems opens a Pandora's box, whereby dentists will be performing brain surgery in order to treat oral problems. The evidence was that Miller had completed 3,000 hours of postgraduate seminar training in orthodontics, periodontal surgery, nutrition, implantology, reconstruction, and

cranial mandibular orthopedics, and was board-certified by the American Board of Oral Implantology. We emphasize, however, that the holding announced in this case is based upon a failure by the Department of Health to prove its allegations by clear and convincing evidence. No broad sweeping inferences may be made from the findings in this case. Instead, the facts of this case clearly show that Miller was using the blood and urine analyses to determine the nutrition of his patients in order to provide systemic treatment of specific oral problems.

At numerous points during his testimony, Miller pointed out to the Department of Health that he did the blood and urine analyses on the four patients in question only to prescribe an enzyme to help digestion, which in turn would help problems which had manifested themselves in the oral cavity. Miller testified at one point that a multivitamin was not as effective as using the specific enzymes that the blood and urine tests could suggest. Miller further testified that he never prescribed any of the enzyme/vitamin pills for nonoral conditions such as bursitis. It is clear from the record that Miller was performing these tests only to treat deficiencies in the oral cavity, which clearly put Miller's treatment methods within the plain meaning of § 71-183.

In addition to Miller's testimony, the testimony of the State's own expert, Tempero, supported the district court's reversal of the Department of Health's findings. At one point, Tempero testified that the use of the data compilations from the NESS company was outside the scope of practice of both dentistry *and* medicine. Tempero went on to testify that a practitioner would be within the scope of the practice of dentistry in using systemic treatment of nutritional deficiencies to treat problems in the mouth. The only contrary evidence is Tempero's testimony that he thought a reasonable dentist would not rely on the information from the NESS company.

Based upon this testimony, the district court found that the Department of Health had failed to establish by clear and convincing evidence that Miller had *both* practiced outside the scope of dentistry *and* had invaded the practice of medicine. Completely absent from the record is any positive testimony that Miller's actions invaded the scope of the practice of

medicine. Instead, the State proceeded on the negative inference that if Miller practiced outside the scope of dentistry, then he must have been invading the practice of medicine. There is nothing untenable or erroneous about the district court's decision to reverse the Department of Health's findings. Based upon the evidence adduced at the hearing, the decision of the district court comports with a commonsense reading of § 71-183. We agree with the finding of the district court that the State failed to prove its case against Miller by clear and convincing evidence, and no error appears on the record from the district court.

## CONCLUSION

We find that the district court was clearly premature in taking the appeal of the November 30, 1994, order of the Department of Health, as such order was not final. However, this infirmity was cured by the later petition by Miller, and the State conceded that jurisdiction was proper at that time.

We find that the district court was not clearly erroneous in overturning the findings of the Department of Health. The district court properly reviewed the record from the Department of Health hearing and found that the State had failed to prove its case by clear and convincing evidence, and we conclude that this finding is not clearly erroneous.

AFFIRMED.

WHITE, C.J., participating on briefs.
WRIGHT, J., not participating.