CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLEE, v. KUM & GO, L.L.C., DOING BUSINESS AS KUM & GO #359, APPELLANT, AND NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE AND CROSS-APPELLANT.

642 N.W.2d 154

Filed April 19, 2002.   No. S-01-305.

Michael J. Lehan, of Kelley & Lehan, P.C., for appellant.

Don Stenberg, Attorney General, Hobert B. Rupe, and, on brief, Laurie Smith Camp for appellee Nebraska Liquor Control Commission.

Thomas O. Mumgaard, Deputy Omaha City Attorney, for appellee City of Omaha.

Amy A. Miller for amicus curiae American Civil Liberties Union of Nebraska Foundation.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Neb. Rev. Stat. § 53-177(1) (Cum. Supp. 2000) provides that no license shall be issued for the retail sale of liquor within 150 feet of any church. The issue presented in this appeal is whether the "House of Faith," located in leased storefront quarters, is a "church" within the meaning of § 53-177.

## PROCEDURAL BACKGROUND

Kum & Go, L.L.C., filed an application with the Nebraska Liquor Control Commission (Commission), on May 21, 1998, for a retail class B liquor license for Kum & Go's location at 503 North 33d Street in Omaha, Nebraska. The Omaha City Council voted, on June 30, to recommend denial of Kum & Go's applica-

tion. However, the Commission granted Kum & Go's application on August 25. The City of Omaha brought a petition for judicial review in the district court. The district court concluded that the Kum & Go location was 139 feet from the House of Faith, which the district court determined was a church within the meaning of § 53-177. Consequently, the district court reversed the decision of the Commission granting Kum & Go a liquor license.

Kum & Go appealed to this court; in a memorandum opinion, we reversed the decision of the district court and remanded the cause to the district court with instructions to remand the case to the Commission. See *City of Omaha v. Nebraska Liquor Control Comm.*, 259 Neb. xix (case No. S-99-452, May 17, 2000). We concluded that the Commission had erred in not applying its own rule defining a "church" for purposes of § 53-177, and we instructed the district court to remand the case for a consideration of Kum & Go's application under the appropriate rule. We specifically declined to comment on the validity of the rule. See *City of Omaha, supra.*

After remand, on August 22, 2000, the Commission again granted Kum & Go a retail class B liquor license. The Commission determined that the House of Faith was not a "church" as defined by the Commission. The City of Omaha appealed to the district court pursuant to the Administrative Procedure Act. The district court determined, in an order filed on February 13, 2001, that the Commission's definition of "church" was arbitrary and that the House of Faith was a church under the plain meaning of the word. The district court vacated the order of the Commission granting Kum & Go a liquor license and reversed the decision of the Commission. Kum & Go appeals.

## FACTUAL BACKGROUND

Mary L. Sherman testified before the Commission by affidavit, dated August 3, 1998, that she was an ordained Pentecostal minister and pastor of the House of Faith. Sherman averred that the House of Faith had a congregation of between 75 and 150 members and regularly accepted new members.

Sherman averred that the House of Faith had been located at 502 North 33d Street, in Omaha, for over 9 years. Sherman testified that the House of Faith rented the building on North 33d

Street and, prior to that time, had held services at the House of Faith Church at 3219 Q Street in Omaha. Sherman also testified that before the House of Faith moved into the building on North 33d Street, the building housed a Baptist church.

Sherman testified that the House of Faith offered religious worship services each Sunday and Friday, prayer meetings each Monday, and choir practice each Saturday. Sherman stated that the House of Faith regularly held services at least four times per week that were open to any person wishing to attend. Sherman also stated that the use of the building was exclusively for worship or religious purposes.

Sherman testified that the House of Faith had maintained a bank account, in the name of the House of Faith, for at least 12 years prior to Sherman's testimony. Sherman stated, however, that because she did not draw a salary as pastor of the House of Faith, the House of Faith had not incorporated or applied for tax-exempt status under Nebraska law.

Photographic evidence in the record shows that the House of Faith is located in a storefront property and has a large white cross prominently displayed on the door. A sign over the door identifies the building as occupied by the House of Faith, "Evangelist M. Sherman (Pastor)," and lists a schedule of services including Sunday school and church services, Monday Bible class, Tuesday prayer service, and a Friday night service. The evidence also reveals that the House of Faith is directly across the street from the Kum & Go location. A report from the city's planning department established that the Kum & Go location was 138 feet from the House of Faith building.

Kum & Go adduced testimony before the Commission hearing officer from Gary Braaten, a district supervisor for Kum & Go. Braaten was the supervisor of the location at issue in this proceeding. Braaten testified that he was aware that the House of Faith was across the street from the Kum & Go location. Braaten stated that the management of the Kum & Go store had reported seeing about a dozen people going in and out of the House of Faith on Sunday mornings, but no other activity at the House of Faith.

Kum & Go also presented evidence that the House of Faith was not listed in the Omaha telephone book or city directory.

Kum & Go presented the affidavit of Michael Howard, superintendent of the office of permits and inspections of the City of Omaha, indicating that as of July 8, 1997, no certificate of occupancy had been issued that would permit the occupancy of the House of Faith property for religious assembly as required by city ordinances. A letter from the Douglas County assessor's office indicated that there was no record that the House of Faith property was classified as a tax-exempt organization.

## ASSIGNMENTS OF ERROR

Kum & Go assigns, consolidated, that the district court erred in finding that (1) the Commission's regulation was arbitrary and beyond its authority and (2) there was not sufficient evidence to support the Commission's findings using the plain meaning of the term "church." On cross-appeal, the Commission also assigns that the district court erred in finding that the Commission's rule defining "church" for purposes of § 53-177 was arbitrary and beyond the Commission's authority.

## STANDARD OF REVIEW

Appeals from orders or decisions of the Commission are taken in accordance with the Administrative Procedure Act. See Neb. Rev. Stat. § 53-1,116 (Cum. Supp. 2000). Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *Urwiller v. Neth, ante* p. 429, 640 N.W.2d 417 (2002). A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Id.* When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

In an appeal under the Administrative Procedure Act, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings. See *Miller v. Horton*, 253 Neb. 1009, 574 N.W.2d 112 (1998). To the extent, however, that the meaning and

interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. See *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998).

## ANALYSIS

### VALIDITY OF REGULATION

Section 53-177(1) provides, in relevant part, that "[n]o license shall be issued for the sale at retail of any alcoholic liquor within one hundred and fifty feet of any church . . . ." The Legislature has not defined the word "church" for these purposes. However, the Commission has adopted 237 Neb. Admin. Code, ch. 2, § 012.05 (rev. 1997), which provides that " '[c]hurch' shall mean a building owned by a religious organization, used primarily for religious purposes, and having tax-exempt status under Neb. Rev. Stat., Sec. 77-202 (1) (c) (Cum. Supp. 1992)." The Commission determined, pursuant to § 012.05, that the House of Faith was not a church within the meaning of § 53-177(1). The district court, however, determined that the Commission's definition of "church," set forth in § 012.05, was invalid because it was inconsistent with the plain meaning of § 53-177(1).

The Commission is empowered to adopt and promulgate rules and regulations to carry out the Nebraska Liquor Control Act, Neb. Rev. Stat. §§ 53-101 to 53-1,122 (Reissue 1998, Cum. Supp. 2000 & Supp. 2001), including provisions covering any and all details which are necessary or convenient to the enforcement of the intent, purpose, and requirements of the act. See § 53-118. See, also, *Terry Carpenter, Inc. v. Nebraska Liquor Control Com.*, 175 Neb. 26, 120 N.W.2d 374 (1963); *State ex rel. Nebraska Beer Wholesalers Assn. v. Young*, 153 Neb. 395, 44 N.W.2d 806 (1950). However, the Commission may not adopt rules and regulations that are in conflict with the act. *Terry Carpenter, Inc., supra; Young, supra.* The power to regulate must be exercised in conformity with all the provisions of the act and in harmony with its spirit and expressed legislative intent. *Terry Carpenter, Inc., supra; Young, supra.*

Generally, a legislative enactment may properly confer general powers upon an administrative agency and delegate to

the agency the power to make rules and regulations concerning the details of the legislative purpose. *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000); *County Cork v. Nebraska Liquor Control Comm.*, 250 Neb. 456, 550 N.W.2d 913 (1996). See, also, *County of Dodge v. Department of Health*, 218 Neb. 346, 355 N.W.2d 775 (1984) (Legislature can delegate power to make rules and regulations to implement policy of statute). Agency regulations, properly adopted and filed with the Secretary of State of Nebraska, have the effect of statutory law. *City of Lincoln v. Central Platte NRD, ante* p. 141, 638 N.W.2d 839 (2002). However, an administrative agency may not employ its rulemaking power to modify, alter, or enlarge provisions of a statute which it is charged with administering. *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994); *County of Dodge, supra.* See, also, *Creighton St. Joseph Hosp., supra.* In order to be valid, a rule or regulation must be consistent with the statute under which the rule or regulation is promulgated. *State ex rel. Spire v. Stodola*, 228 Neb. 107, 421 N.W.2d 436 (1988); *County of Dodge, supra.*

Obviously, then, the Commission may not define "church" in a manner that is inconsistent with the plain meaning of the word. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning. *Ottaco, Inc. v. McHugh, ante* p. 489, 640 N.W.2d 662 (2002). This court has determined that the plain, ordinary, and popular meaning of the word "church" includes a building in which people assemble for the worship of God and for the administration of such offices and services as pertain to that worship, a building used predominately for the honor of God and religion, and a place where persons regularly assemble for worship. See *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996), citing *Calvary Baptist Church v. Coonrad*, 163 Neb. 25, 77 N.W.2d 821 (1956). A building which is used predominately for the honor of a religion would likewise include buildings in which people assemble for non-Christian worship, such as a mosque, a synagogue, or a temple. See *Latenser, supra.* In *Calvary Baptist Church, supra*, this court specifically defined "church," essentially as set forth above, in the context of § 53-177.

The Commission's definition of "church," however, differs substantially from the plain and ordinary meaning of the word. Most significantly, § 012.05 requires that a church be owned by a religious organization, both by the express terms of the regulation and because property must be owned by an educational, religious, charitable, or cemetery organization to be eligible for a property tax exemption pursuant to Neb. Rev. Stat. § 77-202 (Cum. Supp. 2000), which is in relevant part identical to § 77-202 (Cum. Supp. 1992).

Whether or not a building is a church, however, does not depend on the legal ownership of the building. The plain meaning of the word "church" encompasses buildings in which persons regularly assemble for religious worship, regardless of whether the building is owned or rented by those persons. Section 012.05, however, plainly states that a "church" must be owned by a religious organization. In the absence of anything to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning. *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 623 N.W.2d 672 (2001). The mandatory criteria for a church, set forth in § 012.05, are contrary to the plain meaning of the word as used in § 53-177 and may arbitrarily exclude from their definition a number of churches that are entitled to the protection of the statute.

We also note that the criteria set forth by § 012.05 are in some ways more inclusive than the plain meaning of "church." A parsonage, owned by a religious organization and furnished to a member of the clergy, and used primarily to promote the objects and purposes of a faith, is used exclusively for religious purposes and exempt from taxation. See, § 77-202 (Cum. Supp. 2000); *Neb. Unit. Meth. Ch. v. Scotts Bluff Cty. Bd. of Equal.*, 243 Neb. 412, 499 N.W.2d 543 (1993). Arguably, a parsonage would then be a "church" as defined by § 012.05, despite the fact that a parsonage is not a church under the plain meaning of the word.

The Commission argues that its interpretation of the statute is reasonable and has the benefit of being objective and easy to apply. We have stated that although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction. *Affiliated Foods Co-op v. State*, 259 Neb. 549, 611 N.W.2d 105

(2000). However, a statute is open for construction to determine its meaning only when the language used requires interpretation or may reasonably be considered ambiguous. *Philpot v. Aguglia,* 259 Neb. 573, 611 N.W.2d 93 (2000). In the absence of ambiguity, courts must give effect to statutes as they are written. *American Employers Group v. Department of Labor,* 260 Neb. 405, 617 N.W.2d 808 (2000). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *First Data Corp. v. State, ante* p. 344, 639 N.W.2d 898 (2002). Because the language of § 53-177(1) is clear, see *Calvary Baptist Church v. Coonrad,* 163 Neb. 25, 77 N.W.2d 821 (1956), the statute is not susceptible to construction, regardless of whether the Commission's definition is easier to use. We also note that this court's exposition of the plain meaning of "church" in the context of § 53-177, set forth over 45 years ago, has not evoked an amendment of the statute, and we presume that the Legislature has acquiesced to our declaration of the statute's meaning. See *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.,* 260 Neb. 905, 620 N.W.2d 90 (2000).

In short, the Commission's definition of "church," as set forth in § 012.05, is contrary to the plain meaning of the word "church" as used in § 53-177(1), and is thus invalid. While a building's ownership by a religious organization, and incident tax exemption, is relevant evidence in inquiring whether a building is a church, ownership is not dispositive of the inquiry. The district court did not err in determining that § 012.05 was invalid as contrary to the plain language of § 53-177, the statute under which the regulation was promulgated. Kum & Go's first assignment of error and the Commission's assignment of error on cross-appeal are without merit.

APPLICATION OF PLAIN MEANING OF STATUTE

Having correctly found that the Commission's regulation was invalid, the district court proceeded, on its de novo review, to consider whether the House of Faith is a church under the plain meaning of § 53-177(1). This is a factual determination, and the district court's factual findings will be affirmed where competent evidence supports those findings. See *Miller v. Horton,* 253 Neb. 1009, 574 N.W.2d 112 (1998).

The record, as summarized above, clearly supports the district court's finding that the House of Faith is a church within the meaning of § 53-177(1). While there was a conflict in the evidence regarding the size and frequency of religious services at the House of Faith, there was ample evidence from which the district court could have concluded that the House of Faith was a building in which people assemble for the worship of God and for the administration of such offices and services as pertain to that worship, a building used predominately for the honor of God and religion, and a place where persons regularly assemble for worship. See *Latenser v. Intercessors of the Lamb, Inc.*, 250 Neb. 789, 553 N.W.2d 458 (1996).

Kum & Go calls our attention to the fact that the House of Faith did not own the building at issue, did not have a property tax exemption, was not listed in Omaha telephone directories, and had not filed a certificate of occupancy with the City of Omaha. Even considering these facts, however, Sherman's testimony regarding the religious services and other activities conducted by the House of Faith is sufficient to support the district court's factual finding that the House of Faith is a church. The district court's judgment conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Kum & Go's second assignment of error is without merit.

## CONCLUSION

The district court did not err in concluding that the Commission's definition of "church," set forth in § 012.05, is contrary to the plain meaning of the word as used in § 53-177, and the district court's factual finding that the House of Faith is a church is supported by competent evidence. We therefore affirm the judgment of the district court which vacated the order of the Commission granting Kum & Go a liquor license and reversed the decision of the Commission.

AFFIRMED.