ANGELA KOSMICKI, APPELLEE AND CROSS-APPELLANT, V.
STATE OF NEBRASKA, DEPARTMENT OF HEALTH AND
HUMAN SERVICES, AND RON ROSS, DIRECTOR,
APPELLANTS AND CROSS-APPELLEES.
652 N.W.2d 883

Filed November 8, 2002.   No. S-01-508.

Don Stenberg, Attorney General, Michael J. Rumbaugh, Special Assistant Attorney General, Royce N. Harper, and Michele M. Lewon, Senior Certified Law Student, for appellants.

Rebecca L. Gould, D. Milo Mumgaard, and Sue Ellen Wall, of Nebraska Appleseed Center for Law in the Public Interest, Inc., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The Welfare Reform Act (Act), Neb. Rev. Stat. § 68-1708 et seq. (Reissue 1996 & Cum. Supp. 2000), limits recipients of public assistance to no more than 2 years of cash assistance and generally requires that while receiving cash assistance benefits, recipients engage in certain approved work-related activities. Full-time postsecondary education is among the work-related activities acceptable under the Act. The question presented in this appeal is whether Angela Kosmicki's pursuit of a bachelor's degree meets the work activity requirement of the Act when the evidence does not show that Kosmicki will be self-sufficient prior to the expiration of the 2-year cash assistance benefit limitation.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 1998, while Kosmicki was living in Scottsbluff, Nebraska, she applied for public assistance benefits from the Nebraska Department of Health and Human Services (Department) for herself and her son. On November 9, Kosmicki signed a self-sufficiency contract, as required by the Act. Kosmicki's service plan required her to complete an associate degree at Western Nebraska Community College.

In August 1999, Kosmicki moved to Lincoln, Nebraska, to join her newborn daughter's father. In February 2000, Kosmicki left Lincoln to escape an abusive relationship, returned to Scottsbluff, and reapplied for benefits. In April, Kosmicki moved to a domestic violence shelter in Lincoln, and Kosmicki's public assistance case was transferred to the Lincoln office of the Department. On May 12, a new service plan was concluded with the Department in which Kosmicki would do an independent job search, but if her job search was unsuccessful, Kosmicki would attend workshops at Curtis & Associates, Inc.

Kosmicki did not attend required workshops at Curtis & Associates and telephoned her caseworker on June 20, 2000, to inform him that she wished to complete her education and was trying to enroll at the University of Nebraska-Lincoln (UNL). By this time, a total of 8 months had elapsed of the 24 months of cash assistance benefits to which Kosmicki was limited under the Act. Kosmicki's caseworker informed her that if she could not complete a degree program at UNL before reaching her 2-year time limit for cash assistance benefits, then Kosmicki would have to engage in at least 30 hours per week of other approved work activity in order to remain eligible for cash assistance. If, on the other hand, Kosmicki could receive a degree from UNL within the 2-year cash assistance limitation period, Kosmicki's status as a full-time student would satisfy her work activity requirement under the Act.

Kosmicki, at the time, had four to five semesters to complete at UNL before receiving a bachelor's degree. Because Kosmicki could not complete a degree before the end of the 2-year cash assistance limitation period, Kosmicki's caseworker informed her that she could not attend UNL. Kosmicki was told, however, that she would be allowed to complete her associate degree at Southeast Community College. Kosmicki refused to sign a new self-sufficiency contract under the terms offered by the Department.

In July 2000, Kosmicki was informed that as of August 1, 2000, her aid to dependent children payments and medical assistance would stop, although her food stamps would increase to $302 per month, as the result of an initial sanction imposed under

the Act. Kosmicki appealed, and the director of the Department affirmed the sanction.

Kosmicki appealed to the district court under the Administrative Procedure Act, generally raising two arguments. Kosmicki argued that her self-sufficiency contract with the Department was void because the contract was involuntary on her part and that the Department erred in concluding that Kosmicki could not attend UNL. The district court found that the contract was valid, but concluded that the Department had erred in concluding that attending UNL would not be an acceptable work activity pursuant to the Act and the Department's regulations. The district court remanded the case to the Department for the negotiation of a new self-sufficiency contract consistent with the district court's order. The State appeals.

## ASSIGNMENTS OF ERROR

The State's sole assignment of error is that the district court erred in concluding that Kosmicki was entitled to renegotiate a new self-sufficiency contract that included Kosmicki's attending UNL, because Kosmicki cannot complete a degree within the 2-year time limit on her cash assistance benefits. On cross-appeal, Kosmicki assigns that the district court erred in concluding that there was no duress, coercion, and intimidation on the part of the Department

> when the contract formation process outlined by statute and [Department] regulations, and designed to equalize the extreme disparity in bargaining power between low-income families and the State . . . are not followed, and the applicant family is finally forced to accept a contract containing standard clauses that do not reflect the interests and barriers of the applicant family.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Hauser v. Nebraska Police Stds. Adv. Council, ante* p. 605, 650 N.W.2d 760 (2002). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the

decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* In an appeal under the Administrative Procedure Act, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings. *City of Omaha v. Kum & Go,* 263 Neb. 724, 642 N.W.2d 154 (2002).

To the extent that the meaning and interpretation of statutes and regulations are involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Id.* However, an appellate court accords deference to an agency's interpretation of its own regulations unless that interpretation is plainly erroneous or inconsistent. See *CenTra, Inc. v. Chandler Ins. Co.,* 248 Neb. 844, 540 N.W.2d 318 (1995). See, also, *Capitol City Telephone v. Nebraska Dept. of Rev., ante* p. 515, 650 N.W.2d 467 (2002).

## ANALYSIS

### POSTSECONDARY EDUCATION

The intent of the Act was, in part, to reform the welfare system to remove disincentives to work, promote economic self-sufficiency, and provide individuals and families the support needed to move from public assistance to economic self-sufficiency. See § 68-1709. The Act was intended to change public assistance from entitlements to temporary, "contract-based" support, accomplished through individualized assessments of the personal and economic resources of the applicant and the use of individualized self-sufficiency "contracts." See § 68-1709. To that end, the Act limits recipients of public assistance to no more than 2 years of cash assistance and generally requires that while receiving cash assistance benefits, recipients engage in certain approved work-related activities, which can include full-time postsecondary education.

When an individual or family applies for public assistance benefits, a comprehensive assessment of the applicant's personal and financial assets is conducted by the Department. Based on the results of the assessment, the applicant and Department case manager are to develop a self-sufficiency contract, built upon the

premise of urgent action, and detailing the responsibilities, roles, and expectations of the applicant family, the case manager, and other service providers. See §§ 68-1719 and 68-1720. Cash assistance may be provided for a period of time not to exceed a total of 2 years for recipient families, absent certain exceptions which are not pertinent to this appeal. See § 68-1724. Cash assistance is also provided only while recipients are actively engaged in the specific work-related activities outlined in the self-sufficiency contract. § 68-1723.

Under the self-sufficiency contract, the principal wage earner and other nonexempt members of the applicant family are "required to participate in one or more of the following: Education, job skills training, work experience, job search, or employment." § 68-1721(1). Education consists of "the general education development program, high school, Adult Basic Education, English as a Second Language, *postsecondary education*, or other education programs approved in the contract." (Emphasis supplied.) § 68-1721(2). A regulation of the Department, 468 Neb. Admin. Code, ch. 2, § 020.06B1 (1997), provides, in relevant part:

> Post-secondary education is limited to that which is directly related to the fulfillment of an individual's vocational goal. The participant can participate in postsecondary education for up to 24 months. . . . A postsecondary education program that can be included in the Self-Sufficiency Contract should be for occupations that facilitate economic self-sufficiency. In order for postsecondary education to be included in the Contract, the client should demonstrate that the education program will lead to economic self-sufficiency.

The principal goal of the Act is the achievement of self-sufficiency as expediently as possible. The self-sufficiency contract is "built upon the premise of urgent action." § 68-1719. The Legislature has determined that "the primary purpose of the welfare programs in this state is to provide temporary, transitional support for Nebraska families so that economic self-sufficiency is attained in as an expeditious manner as possible, with the goal of attaining such *self-sufficiency within two years of the initial receipt of public assistance*." (Emphasis supplied.) § 68-1709. See, also, 42 U.S.C. § 608(b)(2)(A)(iii) (2000);

45 C.F.R. § 261.12(c) (2001) (stating that for state-administered welfare programs, individual responsibility plans should "be designed to move the individual into whatever private-sector employment he or she is capable of handling as quickly as possible").

To that end, the Act and its associated regulations emphasize that a self-sufficiency contract must include specific goals for both the State and the recipient of benefits. To ensure that a recipient makes progress toward self-sufficiency, "goals shall be set with timelines and benchmarks that facilitate forward momentum." § 68-1719.

> The Contract will identify the goals to be achieved and will include time lines and benchmarks that facilitate forward momentum. The goals should be clear and specific; measurable and verifiable; realistic - within the control of the individual; adequate - contribute to accomplishment of the goal; congruent with the individual's values; and time-limited - can be accomplished in a reasonable time frame *and within the overall time limit.*

(Emphasis supplied.) 468 Neb. Admin. Code, ch. 2, § 020.05 (1997).

It is undisputed in this case that Kosmicki did not meet, nor did she intend to meet, the requirements of her self-sufficiency contract as set forth in the May 12, 2000, service plan. The issue is whether the Department was correct in its determination that Kosmicki's proposal, to obtain a bachelor's degree at UNL, would not be an acceptable goal of an amended self-sufficiency contract. We conclude that the Department's position is supported by the language and purpose of the Act.

In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Capitol City Telephone v. Nebraska Dept. of Rev.,* ante p. 515, 650 N.W.2d 467 (2002). When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction

which would defeat it. *Volquardson v. Hartford Ins. Co., ante* p. 337, 647 N.W.2d 599 (2002). The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible. *Willers v. Willers*, 255 Neb. 769, 587 N.W.2d 390 (1998).

Considered as a whole, the Act reflects the Legislature's intent that recipients of public assistance become self-sufficient as quickly as possible and that they attain self-sufficiency within 2 years of initially receiving benefits. The Department's regulations, consistent with the purpose and language of the Act, require that postsecondary education must lead to economic self-sufficiency to be included in a self-sufficiency contract and that the goals set forth in a self-sufficiency contract must be attainable within the 24-month overall time limit imposed by the Act. See §§ 020.05 and 020.06B1. In this case, it is not disputed that Kosmicki's proposed goal—a bachelor's degree from UNL—could not be achieved within the 24 month overall time limit. It was, therefore, unacceptable pursuant to § 020.05.

The legislative history of § 68-1721 supports the conclusion that the Legislature did not intend for recipients of public assistance to pursue a course of postsecondary education that cannot be completed prior to the end of the cash assistance limitation period. The inclusion of "postsecondary education" as acceptable work activity under the Act was a result of a committee amendment to 1995 Neb. Laws, L.B. 455. See Executive Sessions, Health and Human Services Committee, 94th Leg., 1st Sess. 4 (Mar. 29, 1995). A floor amendment was offered to remove the language added by the committee amendment, and in voting to reject the floor amendment, the Legislature specifically debated the intent of the postsecondary education provision. See, generally, Floor Debate, 94th Leg., 1st Sess. 4244-65 (Apr. 10, 1995). The debate, considered as a whole, reflects the Legislature's understanding that the postsecondary education provision was intended to permit a recipient of public assistance to complete a course of postsecondary education within the cash assistance limitation period. See *id.* As stated by the principal introducer of L.B. 455:

A community college is a postsecondary education. It was always the intent that that be included. [One senator] brought forward the fact that he wanted it stated more plainly. And, certainly, if a woman came in and only had three semester hours left for her college degree, it would make no sense in that individual initial assessment to say, well, we aren't going to pay for that. I mean, how much sense does that make when, with that additional three hours, she could go out and get an excellent job? And so it's always been the intent to provide the new training, the new skills to women; it has never been the intent for the state to provide a four-year college education. This does not do that, it just give[s] the caseworker the possibility of allowing women to attend either a community college or what may be necessary in order to complete their education to go out and earn a living wage.

Floor Debate, Health and Human Services Committee, 94th Leg., 1st Sess. 4249 (Apr. 10, 1995).

In concluding that Kosmicki should have been permitted to pursue her bachelor's degree, the district court reasoned that there are many occupations in which employers require education, but not necessarily a degree. For instance,

[b]y attending UNL business college for two years and taking a number of accounting classes, an individual may make themselves [sic] marketable to a company that is looking to hire a bookkeeper or accountant and does not require the person to be a CPA or to have a bachelor's degree. . . . Likewise, an individual who takes two years of college courses at UNL in the area of Computer Science may be able to find excellent employment and become self sufficient without ever having obtained a bachelor's degree.

The district court's reasoning is plausible, but is misplaced in the instant case. The record clearly establishes that Kosmicki's course of education at UNL was not intended to make Kosmicki self-sufficient before the end of her cash assistance limitation period. We recognize that there is testimony in the record to suggest that the Department has applied a de facto rule that a recipient of benefits must obtain a degree within 2 years in order for postsecondary education to be included in a self-sufficiency

contract. The validity of such a standard, if it exists, is not before us in this case. It may be possible for a recipient of benefits to demonstrate that even without obtaining a degree, his or her course of postsecondary education will lead to self-sufficiency within the cash assistance limitation period. That circumstance, however, is not presented in the instant case.

The purpose of the Act is to ensure, to the greatest extent possible, that recipients of public assistance benefits become self-sufficient before the expiration of their 2-year limitation period on cash assistance benefits. The Act, and regulations promulgated by the Department, require that self-sufficiency contracts establish reasonable goals to achieve that purpose. While postsecondary education is acceptable work-related activity under the Act, a course of postsecondary education is only an appropriate goal for a self-sufficiency contract if the postsecondary education will lead to economic self-sufficiency within the cash assistance limitation period. There is no evidence in the present record to suggest that Kosmicki's pursuit of a bachelor's degree at UNL would satisfy that criterion. Therefore, the district court erred in determining that Kosmicki was entitled to have her education at UNL included in her self-sufficiency contract.

## CROSS-APPEAL

In her cross-appeal, Kosmicki contends that the district court erred in determining that the self-sufficiency contract set forth in her May 12, 2000, service plan was not void and unenforceable. Kosmicki's assignment of error seems to advance two claims: (1) The self-sufficiency contract is void because of the relative bargaining position of the parties and (2) the self-sufficiency contract is void because the Department failed to reassess Kosmicki when she reapplied for benefits.

There are several reasons that Kosmicki's argument fails. First, we note that even a declaration that the May 12, 2000, service plan was void would not permit Kosmicki to pursue a bachelor's degree from UNL while receiving cash assistance benefits. The Act requires that a self-sufficiency contract be in place and that a recipient of benefits engage in approved work activity in order for cash assistance benefits to be paid. Even if the May 12 service plan was void, pursuit of a bachelor's degree at

UNL would still be an unacceptable goal of a new service plan, based on our reasoning set forth above. In other words, even if Kosmicki's cross-appeal has merit, it furnishes no discernible basis for relief.

■ Second, although the Act uses the word "contract" to describe the documents setting forth the respective obligations of the recipient and the State, we are not persuaded that the Legislature's use of the term was intended to import the body of law associated with contractual interpretation and enforcement. The self-sufficiency contracts created under the Act are creatures of statute, and not common law. At common law, a contract, in its broad sense, is an agreement, obligation, or legal tie whereby a party binds itself, or becomes bound, expressly or impliedly, to pay a sum of money or to perform or omit to do some certain act or thing. *McNally v. Ponce*, 150 Neb. 267, 34 N.W.2d 262 (1948). In this case, however, the legal ties between the parties, and their rights and remedies, are created by and set forth in the Act, not the self-sufficiency contract. The self-sufficiency contract serves as a means for the State and a recipient of public assistance to memorialize a specific plan of action by which a recipient can attain self-sufficiency; however, it is not given legal effect by the agreement of the parties and therefore is not a contract as that term is generally used in civil law. Given that, we are not convinced that the enforceability of statutory requirements can be voided in the same manner as a civil contract that is created solely by agreement of the parties.

■ Third, even assuming that principles of contract law are applicable to the instant case, Kosmicki failed to show that the May 12, 2000, self-sufficiency contract should be rescinded due to duress. The burden of proving duress is placed upon the party alleging it. *Lustgarten v. Jones*, 220 Neb. 585, 371 N.W.2d 668 (1985). What constitutes duress is a question of law, but existence of duress is a question of fact. *Id.* To be voidable because of duress, an agreement must not only be obtained by means of the pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal. *Bock v. Bank of Bellevue*, 230 Neb. 908, 434 N.W.2d 310 (1989); *Lustgarten, supra.* There is no evidence in the record to support a finding that the self-sufficiency contract is itself unjust, unconscionable, or illegal.

█ Furthermore, there is no evidence to support a finding that the self-sufficiency contract was the result of duress on the part of the State. The essence of duress is the surrender to unlawful or unconscionable demands. It cannot be predicated upon demands which are lawful or the threat to do that which the demanding party has a legal right to do. *Id.* Clearly, the State's requirement that Kosmicki enter into a self-sufficiency contract in order to receive cash assistance was lawful, as it was required by the Act.

Kosmicki also claims that the May 12, 2000, self-sufficiency contract is unconscionable and void because the Department failed to conduct a new comprehensive asset assessment when she reapplied for benefits after moving to Scottsbluff. First, we note that Kosmicki's caseworker in Lincoln testified that when he was assigned to Kosmicki's case, he reviewed her previous assessment and went over that assessment with Kosmicki to determine what, if anything, had changed. The caseworker testified that he had performed an acceptable assessment based on Kosmicki's change of circumstances. Furthermore, we are unable to discern precisely how the Department's alleged failure to perform a reassessment bears on whether the May 12 self-sufficiency contract was the result of duress. A comprehensive assets assessment "shall structure personal resources information and control subjectivity," and is used "[t]o develop a self-sufficiency contract . . . and promote services which specifically lead to self-sufficiency." § 68-1718(3)(a). The assessment does not function, however, to enhance the bargaining position of an applicant in any substantive way. For the foregoing reasons, the district court's finding that Kosmicki's May 12 self-sufficiency contract was not the product of duress is supported by competent evidence.

█ Kosmicki finally argues that the May 12, 2000, self-sufficiency contract is an adhesion contract and is therefore void. Again, even if we were to assume that contract principles apply under these circumstances, Kosmicki's argument is without merit. Even if the self-sufficiency contract could somehow be construed as an adhesion contract, adhesion contracts are not automatically unconscionable or void. See *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571 (Tex. 1999) (citing authorities). Kosmicki does

not contend that the self-sufficiency contract is unconscionable, and there is no evidence that the May 12 self-sufficiency contract did not fall within Kosmicki's reasonable expectations as the allegedly adhering party. See, generally, *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 623 P.2d 165, 171 Cal. Rptr. 604 (1981) (citing authorities). In short, Kosmicki's assignment of error on cross-appeal is without merit.

## CONCLUSION

The purpose of the Act is to make sure that recipients of public assistance benefits attain economic self-sufficiency within 2 years of receiving public assistance. To that end, recipients are required to engage in work activity and pursue goals that will lead to such self-sufficiency within the 2-year limitation period on cash assistance. Kosmicki failed to demonstrate that her desired goal of pursuing a bachelor's degree at UNL was consistent with achieving self-sufficiency within 2 years of receiving public assistance, and the district court erred in concluding that Kosmicki was entitled to include that goal in her self-sufficiency contract. The judgment of the district court is reversed to that extent. The district court correctly determined, however, that Kosmicki's May 12, 2000, self-sufficiency contract was valid, and that determination is affirmed. The judgment of the district court is, therefore, affirmed in part and in part reversed, and the cause is remanded to the district court with directions to affirm the decision of the Department.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.