IN RE INTEREST OF STEVEN K., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. STEVEN K., APPELLANT.
IN RE INTEREST OF CASSANDRA M.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
CASSANDRA M., APPELLANT.
661 N.W.2d 320

Filed May 13, 2003.    Nos. A-02-941, A-02-942.

Thomas C. Riley, Douglas County Public Defender, and John J. Jedlicka for appellant Steven K.

Thomas C. Riley, Douglas County Public Defender, and Katie M. Anderson for appellant Cassandra M.

James S. Jansen, Douglas County Attorney, Jennifer L.K. Stevens, Nicole Brundo Goaley, and Matt Kahler for appellee.

HANNON and MOORE, Judges, and BUCKLEY, District Judge, Retired.

MOORE, Judge.

## INTRODUCTION

In these consolidated appeals, the Douglas County Separate Juvenile Court denied a juvenile's motion to terminate the court's jurisdiction and a juvenile's petition to dismiss after each juvenile married. Because we determine that marriage terminates the minority of a juvenile and, therefore, also ends the jurisdiction of the juvenile court, we reverse, and remand with directions.

## BACKGROUND

*Steven K.*

A juvenile petition was filed in the separate juvenile court of Douglas County, Nebraska, on December 13, 2001, alleging that Steven K. was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2002), in that on or about October 5, he violated Neb. Rev. Stat. § 28-416(13) (Cum. Supp. 2002) by possessing marijuana weighing 1 ounce or less and Neb. Rev. Stat. § 28-441 (Reissue 1995) by using or possessing drug paraphernalia. Steven entered a plea of admission to count I (possession of marijuana), and the State dismissed count II (drug paraphernalia). A disposition hearing was held on May 24, 2002, at which time Steven was placed on probation to reside with his father and a community-based evaluation was ordered. A further disposition hearing was held on June 27, when the community-based evaluation was complete. At that time, Steven was again placed on

probation to reside with his father. On July 15, Steven filed a motion to terminate jurisdiction, alleging that he was married on July 5 in Douglas County, that he and his bride had the consent of their parents, and that the juvenile court no longer had jurisdiction as the marriage ended his minority pursuant to Neb. Rev. Stat. § 43-2101 (Reissue 1998).

A hearing was held on July 19, 2002, on Steven's motion to terminate jurisdiction. Evidence admitted at the hearing revealed that Steven was born July 12, 1984, making him 18 years old at the time of the hearing, and that his marriage occurred on July 5, 2002. The State stipulated to the occurrence of Steven's marriage. An order was entered on July 19 denying Steven's motion to terminate jurisdiction, and Steven has timely appealed.

*Cassandra M.*

A juvenile petition was filed in the separate juvenile court of Douglas County, Nebraska, on April 16, 2002, alleging that Cassandra M., born January 4, 1987, was a juvenile within the meaning of § 43-247(3)(b), having been habitually truant from school. At a pretrial hearing held on May 14, 2002, Cassandra moved to dismiss the action on jurisdictional grounds upon the basis of her marriage. While the record before us does not contain evidence of a marriage license or any stipulation thereof, both parties acknowledge in their briefs that Cassandra was married on May 1. The court denied Cassandra's motion, and on July 18, an adjudication hearing was held. The motion to dismiss was renewed and again denied. A hearing on the merits was held on July 19, on which date an order was entered adjudicating Cassandra to be a child within the meaning of § 43-247(3)(b) and placing Cassandra in the parental home. Cassandra timely appealed.

## ASSIGNMENT OF ERROR

Steven and Cassandra both allege that the juvenile court erred in finding jurisdiction of the juvenile court to be proper despite their marriages.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of

the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002).

Interpretation of a statute presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Johnson v. Kenney*, 265 Neb. 47, 654 N.W.2d 191 (2002).

## ANALYSIS

Resolution of these appeals requires a review and analysis of several provisions of the Nebraska Revised Statutes. In approaching this task, we are governed by the well-known rules of statutory construction adopted by the Nebraska Supreme Court. In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002). When construing a statute, an appellate court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Id.* The components of a series or collection of statutes pertaining to a certain subject matter which are in pari materia may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent, harmonious, and sensible. *Id.*

Chapter 43 of the Nebraska Revised Statutes contains a series of statutes pertaining to infants and juveniles, including the Nebraska Juvenile Code, Neb. Rev. Stat. § 43-245 et seq. (Reissue 1998 & Cum. Supp. 2002). For the purpose of the juvenile code, unless the context otherwise requires, "[a]ge of majority" means 19 years of age and "[j]uvenile" means any person under the age of 18. § 43-245(1) and (4). Section 43-247(1) provides that the juvenile court has jurisdiction of any juvenile who has committed

an act other than a traffic offense which would constitute a misdemeanor or an infraction under the laws of this state. Pursuant to this section, there is no dispute that the juvenile court properly acquired jurisdiction over Steven at the time of the initial adjudication and over Cassandra at the time the petition was filed. Section 43-247 further provides:

Notwithstanding any disposition entered by the juvenile court under the Nebraska Juvenile Code, the juvenile court's jurisdiction over any individual adjudged to be within the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction.

Accordingly, the juvenile court's jurisdiction over Steven and Cassandra would normally terminate no later than their reaching the age of majority, or 19 years of age.

Chapter 43, article 21, of the Nebraska Revised Statutes is entitled "Age of Majority." Section 43-2101 states, "All persons under nineteen years of age are declared to be minors, but in case any person marries under the age of nineteen years, his or her minority ends." Therefore, under this statute, Steven's minority ended upon his marriage on July 5, 2002, and Cassandra's minority ended upon her marriage on May 1. We also note that a similar provision is contained in the Nebraska Probate Code at Neb. Rev. Stat. § 30-2209(26) (Cum. Supp. 2002) ("[m]inor means an individual under nineteen years of age, but in case any person marries under the age of nineteen years his or her minority ends").

The only reference to marriage in the juvenile code is found in § 43-289, which provides in part:

In no case shall a juvenile committed under the terms of the Nebraska Juvenile Code be confined after he or she reaches the ages of majority. . . .

The marriage of any juvenile committed to a state institution under the age of nineteen years shall not make such juvenile of the age of majority.

The State argues that the plain language of § 43-247 does not require the juvenile court to terminate its jurisdiction, since the termination of a juvenile court proceeding hinges upon the individual's reaching the age of 19 or the court's discharging the proceeding from its jurisdiction. While it is true that this portion

of § 43-247 does not specifically discuss the effect of the marriage of a juvenile, it does not necessarily follow that jurisdiction should not be terminated due to a juvenile's marriage. In fact, § 43-247 allows the juvenile court to "otherwise discharge" the juvenile from its jurisdiction without providing any limitations on the reasons for the court to order such discharge.

The State also argues that we should distinguish between the juvenile court's *acquiring* jurisdiction and its *retaining* jurisdiction. The State cites to 20 Am. Jur. 2d *Courts* (1995) for the proposition that once a court obtains jurisdiction over a person and the subject matter of a case, it retains jurisdiction until a final disposition has been made. This authority is clearly inapplicable to the case at hand, since § 43-247 provides specifically that a juvenile court's jurisdiction terminates upon the individual's reaching the age of majority or the court's otherwise discharging the individual from its jurisdiction. There is no "final disposition" of a juvenile case other than termination as set forth above.

In arguing the distinction between acquiring and retaining jurisdiction, the State essentially admits that the juvenile court could not have obtained jurisdiction over Steven and Cassandra had they been married at the time the State filed the petitions. We fail to see how marriage after a juvenile petition is filed should be treated any differently.

The State next argues that divesting the juvenile court of its properly acquired jurisdiction would contravene the purposes of the juvenile code. Section 43-246 provides that the juvenile code shall be construed to effectuate the following:

> (1) To assure the rights of all juveniles to care and protection and a safe and stable living environment and to development of their capacities for a healthy personality, physical well-being, and useful citizenship and to protect the public interest;
> (2) To provide for the intervention of the juvenile court in the interest of any juvenile who is within the provisions of the Nebraska Juvenile Code . . . ;
> (3) To remove juveniles who are within the Nebraska Juvenile Code from the criminal justice system whenever possible and to reduce the possibility of their committing

future law violations through the provision of social and rehabilitative services to such juveniles and their families[.]

While statutory construction requires giving effect to the purpose and intent of a statute, it does not allow a court to ignore the plain language of the statute. See *Kosmicki v. State*, 264 Neb. 887, 652 N.W.2d 883 (2002). Further, courts are required to consider the components of a series of statutes pertaining to a certain subject matter which are in pari materia. See *id.* Chapter 43 is a series of statutes pertaining to infants and juveniles. Article 21 of chapter 43 pertains to the age of majority, and § 43-2101 clearly provides that when a person under 19 years of age marries, his or her minority ends. This section must be considered when construing article 2 of chapter 43, the juvenile code. Although the juvenile code does not contain a similar provision, it is unnecessary to duplicate the clear language of § 43-2101 in the juvenile code, since the articles must be considered together. Further, if § 43-2101 were not deemed applicable to the juvenile code, then the language of § 43-289, providing that the marriage of a juvenile committed to a state institution does not make such juvenile of the age of majority, would be unnecessary. In other words, construing the aforementioned statutory provisions together, and giving effect to their plain meaning, the marriage of a juvenile under the age of 19 ends the minority status of that juvenile unless such juvenile is committed to a state institution.

The juvenile court, in denying Steven's motion to terminate jurisdiction, stated, "[C]learly the marriage of any juvenile committed to a state institution *or already under the jurisdiction of the court, particularly on a criminal matter,* shall not make such juvenile of the age of majority." (Emphasis supplied.) There is simply no statutory support for this conclusion. If the Legislature intended such an additional exception to the general provision that marriage terminates minority status, then it could have clearly provided such. It is not within the province of the courts to read a meaning into a statute that is not warranted by legislative language. *Memorial Hosp. of Dodge Cty. v. Porter*, 4 Neb. App. 716, 548 N.W.2d 361 (1996), *aff'd* 251 Neb. 327, 557 N.W.2d 21 (1996). We decline to expand upon the plain language of §§ 43-247 and 43-2101 to include an exception that provides that marriage does not terminate the minority of an

individual who is already under the jurisdiction of the juvenile court but not committed to a state institution.

We conclude that pursuant to the plain language of §§ 43-247 and 43-2101, Steven's marriage on July 5, 2002, and Cassandra's marriage on May 1, 2002, ended their minority status and that the juvenile court no longer had jurisdiction over them. Accordingly, the juvenile court erred in denying Steven's motion to terminate jurisdiction and Cassandra's motion to dismiss the petition. We acknowledge that due to our reaching this conclusion, Steven and Cassandra lose the benefit of being treated as juveniles under the juvenile code, as a result of their marriages.

We also acknowledge, as aptly discussed in the following dissent, that other jurisdictions faced with this issue have determined that a juvenile court's jurisdiction continues following a juvenile's marriage. These courts have primarily relied upon the beneficent purpose of the juvenile code to reach this conclusion. While we certainly agree that our conclusion defeats the underlying purposes and protections afforded juveniles under the juvenile code, we believe that Nebraska's unique statutory scheme leaves us no choice. We reach this conclusion based upon the language of §§ 43-2101 (marriage ends minority) and 43-289 (marriage of juvenile committed to state institution does not make juvenile of age of majority). In none of the cases cited by the State in its brief or in the dissent is there a statutory scheme identical to that in Nebraska. While the above provisions were added to chapter 43 at different times and from different sources, we cannot presume that the Legislature was unaware of the plain effect of these statutes on the juvenile court's jurisdiction over a married person under the age of 19. If the Legislature did not intend for marriage to terminate the jurisdiction of the juvenile court in all respects except for those juveniles committed to a state institution, then it is incumbent upon the Legislature, not this court, to statutorily implement such a rule.

## CONCLUSION

The juvenile court's jurisdiction over Steven and Cassandra terminated upon their respective marriages. We reverse the order of the juvenile court entered on July 19, 2002, denying Steven's motion to terminate jurisdiction and remand the cause to the

juvenile court with directions to enter an order reflecting the termination of its jurisdiction as to Steven. We reverse the order of the juvenile court entered on July 19, 2002, denying Cassandra's motion to dismiss and remand the cause to the juvenile court with directions to dismiss the petition.

REVERSED AND REMANDED WITH DIRECTIONS.

HANNON, Judge, dissenting.

I must respectfully dissent from the majority opinion because, as I would interpret the Nebraska Juvenile Code, the marital status of the juvenile has nothing to do with the jurisdiction of the juvenile court. Section 43-247(3)(b) grants the juvenile court jurisdiction over any "juvenile" that is habitually truant from school. Section 43-247 also provides that "the juvenile court's jurisdiction over any individual adjudged to be within the provisions of this section shall continue until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." For the purpose of the juvenile code, § 43-245(1) defines the age of majority as 19 years of age and § 43-245(4) defines "[j]uvenile" as "any person under the age of eighteen." In my view, these definitions are in no way ambiguous or subject to interpretation, and in my view, these definitions control the meaning of "juvenile" for the purpose of the juvenile code.

In my view, § 43-2101 and several other statutes which specifically provide that minors do or do not reach the age of majority upon marriage for various specific purposes do not throw light upon the meaning of the juvenile code. I think § 43-2101 deals only with the right to contract. In fact, the provision now found at § 43-2101 was found in chapter 38 of the Nebraska Revised Statutes as late as 1984. See Neb. Rev. Stat. § 38-101 (Reissue 1984). Traditionally, chapter 38 dealt with the guardianship of minors. See id.

I also point out that the majority's interpretation of the juvenile code will place this state in a minority position, if not in a unique position. See Annot., 14 A.L.R. 2d 336 et seq. (1950). A review of the cases cited in that annotation shows that while the terms of the various states' statutes vary, the legal traditions concerning minority and its termination are quite similar to those of this state, and all but one state have concluded that the jurisdiction of the

juvenile court is not affected by marital status. The one case holding that marriage ends minority for the purpose of a juvenile commitment was *State v. De Marco*, 20 Ala. App. 52, 100 So. 574 (1924). Perhaps that case is distinguishable from the case at hand because the commitment order in *De Marco* committed the juvenile to a training school during her minority. That case does not purport to interpret the meaning of a juvenile code, but merely applies the meaning of minority to a court order. I would therefore affirm the juvenile courts in both cases.