For the reasons stated above, we find that the juvenile court erred in terminating Greg's parental rights to Crystal, and therefore, we reverse that decision. As stated above, in a separate memorandum opinion for cases Nos. A-03-650 through A-03-653, we affirm the juvenile court's decision to terminate Tammy's parental rights to Crystal.

AFFIRMED IN PART, AND IN PART REVERSED.

IN RE INTEREST OF ANTONE C. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. MARY M. MORAN,
INTERVENOR-APPELLANT, AND DOUGLAS COUNTY,
INTERVENOR-APPELLEE.

677 N.W.2d 190

Filed March 30, 2004.   No. A-03-615.

Sheri E. Cotton for intervenor-appellant.

Stuart J. Dornan, Douglas County Attorney, and Bernard J. Monbouquette for intervenor-appellee.

CARLSON, MOORE, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Mary M. Moran, an attorney appointed as guardian ad litem for the minor children in these proceedings, appeals from the juvenile court's order entitled "Nunc Pro Tunc and Notice" which modified its initial order approving Moran's fees. We conclude that the order did not constitute an order nunc pro tunc and that the juvenile court did not have authority to modify its prior order within term. We therefore vacate the "nunc pro tunc" portion of the order and remand the cause with directions to reinstate the initial order approving Moran's fees.

## BACKGROUND

On March 17 and May 16, 2000, the juvenile court appointed Moran as guardian ad litem for the minor children in this matter. Moran thereafter undertook those duties and subsequently requested fees for her services. Although it is not directly relevant to this appeal, we note that Moran previously appealed the

juvenile court's partial disallowance of fees concerning services for March 2002. See *In re Interest of Antone C. et al.,* 12 Neb. App. 152, 669 N.W.2d 69 (2003).

On April 17, 2003, the court conducted a hearing on Moran's application for fees. The court received exhibit 47, which included Moran's fee statements for September 2002 through March 2003. Exhibit 47 showed fees and costs of $2,084.05 for February and $2,846.97 for March. The court also received exhibits 48 and 49, which were Moran's fee statements for July and August 2002. Two deputy county attorneys appeared and indicated their full agreement with and approval of the fees and costs in these three exhibits as amended by the parties and the court. The court inquired whether the parties and counsel had so agreed just for the December and January fees in exhibit 47, and counsel responded, "They've reviewed all of [the exhibit 47 fees]" and "[The exhibit 47 fees] are for the months of September through March of [2003]." On April 18, 2003, the court entered an order approving payment of Moran's fees as amended and set forth in exhibits 47 through 49.

On April 28, 2003, the court entered the order entitled "Nunc Pro Tunc and Notice." The court stated:

> This Court, having fully reviewed Exhibit No. 47 subsequent to its admission into evidence at the April 17, 2003 hearing, became aware for the first time that new monthly billings for the months of February and March, 2003 were submitted as part of Exhibit No. 47, and that these billings have not been cleared through the Office of the Juvenile Court Administrator prior to being approved for payment in the Court's Order of April 17, 2003. The Court has serious concerns that these billings are excessive and contain unnecessary work on the part of the Guardian ad Litem. The Court now therefore amends its Order of April 17, 2003, Nunc Pro Tunc in the following particulars:
>
> That the Court approves payment of attorney fees under Exhibit Nos. 48 and 49 only, AND IT IS SO ORDERED.
>
> IT IS FURTHER ORDERED that this matter shall be set for a continued hearing on the request for payment of fees of the Guardian ad Litem for the children contained in Exhibit No. 47 . . . .

The court also restricted Moran from performing additional work on the case absent express approval from the juvenile court and appointed a "Co-Guardian ad Litem."

On May 8, 2003, the court conducted the further hearing contemplated by the April 28 order. Moran moved for a continuance, for the judge to recuse himself, and for the court to vacate the "nunc pro tunc" order. The court denied Moran's motions and ordered that Moran be paid $500 for her services in February and $500 for her services in March.

## ASSIGNMENTS OF ERROR

Moran assigns that the juvenile court erred (1) in modifying its April 18, 2003, order by entering a "nunc pro tunc" order on April 28 and (2) in denying Moran due process in several respects.

## STANDARD OF REVIEW

■ On appeal, the juvenile court's decision on guardian ad litem fees is reviewed de novo on the record for an abuse of discretion. See, *In re Interest of Anthony R. et al.*, 264 Neb. 699, 651 N.W.2d 231 (2002) (juvenile cases are reviewed de novo on record); *Halouska v. Halouska*, 7 Neb. App. 730, 585 N.W.2d 490 (1998) (allowance and amount of guardian ad litem fees will be set aside only where there appears to be abuse of discretion by trial court).

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Halouska v. Halouska, supra.*

## ANALYSIS

Moran asserts that the juvenile court lacked authority to enter the April 28, 2003, order reducing the fees previously approved in the April 18 order. She argues that the April 28 order was not a valid nunc pro tunc order.

■ According to case law, a nunc pro tunc order operates to correct a clerical error or a scrivener's error, not to change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually

rendered, even if such order was not the order intended. See *Walsh v. City of Omaha*, 11 Neb. App. 747, 660 N.W.2d 187 (2003).

The record shows that at the April 17, 2003, hearing, the juvenile court stated approval of the fees and expenses represented in exhibits 47 through 49, and that the April 18 order accurately memorialized that approval. The April 28 order shows that the juvenile court judge subsequently decided to change or revise the April 18 order. The case law rejects use of a nunc pro tunc order for that purpose.

■ We next consider whether legislation adopted in 2000 modifies the case law regarding the function of nunc pro tunc orders. Neb. Rev. Stat. § 25-2001(3) (Cum. Supp. 2002) provides, "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court by an order nunc pro tunc at any time on the court's initiative . . . ."

■ Subsections (1), (2), and (4) of § 25-2001 expressly address a district court's authority to modify within term, under its equity jurisdiction, and after close of term. Unlike the other subsections of § 25-2001, subsection (3) does not specifically refer to the district court. We therefore assume, without deciding, that the authority to enter nunc pro tunc orders under subsection (3) extends to the juvenile court. See *In re Interest of Steven K.*, 11 Neb. App. 828, 661 N.W.2d 320 (2003) (in discerning meaning of statute, court must determine and give effect to purpose and intent of Legislature as ascertained from entire language of statute considered in its plain, ordinary, and popular sense).

We must consider whether the April 28, 2003, order corrected an error on the record "arising from oversight or omission" as contemplated by § 25-2001(3). The subsection's language encompasses both the correction of "[c]lerical mistakes" and the correction of "errors [in an order which have arisen] from oversight or omission" as being within the function of an order nunc pro tunc. Considered alone, the phrase "errors . . . arising from oversight or omission" might be construed to extend the function of an order nunc pro tunc. We reject that interpretation.

■ The Legislature is deemed to be aware of existing Supreme Court precedent when it enacts legislation. *In re Estate*

*of Kopecky*, 6 Neb. App. 500, 574 N.W.2d 549 (1998). We therefore consider that the Legislature understood the existing case law regarding nunc pro tunc orders when adopting § 25-2001(3). In enacting subsection (3), the Legislature expressly characterized an order correcting errors arising "from oversight or omission" as an "order nunc pro tunc."

■ Section 25-2001(3) authorizes a nunc pro tunc order "at any time," whether during or after term. Unless limited to the preexisting function of nunc pro tunc orders, the "oversight or omission" language would greatly expand the function of such orders, rendering subsections (1), (2), and (4) superfluous. An interpretation inferring such expansion violates the rule requiring effect to be given, if possible, to all the several parts of a statute and precluding rejection of any sentence, clause, or word as superfluous if it can be avoided. See *Keller v. Tavarone*, 265 Neb. 236, 655 N.W.2d 899 (2003). We conclude that the plain meaning of the language, as properly understood, limits the operation of subsection (3) to nunc pro tunc orders as they existed under prior case law.

Although we do not deem it necessary to resort to legislative history, we note that the legislative history supports our conclusion that the Legislature intended only to codify the court's authority to enter nunc pro tunc orders as that authority has been set forth in case law:

> [T]here is no statute which provides for an order nunc pro tunc to correct a clerical error in order to change a clerical mistake arising from an oversight or admission [sic]. . . .
> [T]he post-trial motion procedure is clarified, and the statutory authority for nunc pro tunc orders is created.

Floor Debate, L.B. 921, Judiciary Committee, 96th Leg., 2d Sess. 9720 (Mar. 1, 2000).

Regardless of its title, the juvenile court's April 28, 2003, order was not a nunc pro tunc order as defined by Nebraska law.

■ As a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been conferred upon it by statute. *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002). Because the juvenile court is not a court of general jurisdiction, it lacks authority to modify or vacate its own judgments during the term in which they

are rendered. See *In re Interest of Lisa V.*, 3 Neb. App. 559, 529 N.W.2d 805 (1995).

We conclude that the portion of the April 28, 2003, order purporting to modify the prior approval of Moran's fees and costs must be vacated and that the April 18 order approving those fees and costs must be reinstated. Moran assigns no error regarding the remaining portions of the April 28 order directing Moran to perform no additional work without express approval and appointing a coguardian ad litem, and our decision does not affect those portions of the April 28 order.

Because our consideration of the "nunc pro tunc" order is dispositive of this appeal, we need not consider Moran's remaining assignment of error. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

## CONCLUSION

For the foregoing reasons, we conclude that the juvenile court lacked authority to modify the April 18, 2003, order approving Moran's fees and costs. We therefore vacate that portion of the April 28 order modifying fees and costs and remand the cause with directions to reinstate the order entered on April 18.

NUNC PRO TUNC ORDER VACATED IN PART,
AND CAUSE REMANDED WITH DIRECTIONS.